FILED
United States Court of Appeals
Tenth Circuit

**March 12, 2014**

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

MARCIA EISENHOUR,

　　Plaintiff - Appellant,

v.

WEBER COUNTY, a political
division of the State of Utah; CRAIG
D. STOREY, CRAIG DEARDON,
KENNETH BISCHOFF, and JAN
ZOGMAISTER, in their official and
individual capacities,

　　Defendants - Appellees.

No. 12-4190
(D.C. No. 1:10-CV-00022-DB)
(D. Utah)

---

**ORDER**

_____

Before **GORSUCH**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

_____

　　The Plaintiff requests rehearing, and the panel grants the request. The Court

vacates the opinion issued originally on December 31, 2013. The clerk is directed to

substitute the attached amended decision and to file it contemporaneously with this

order.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

March 12, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

MARCIA EISENHOUR,

      Plaintiff - Appellant,

v.

WEBER COUNTY, a political division of the State of Utah; CRAIG D. STOREY, CRAIG DEARDON, KENNETH BISCHOFF, and JAN ZOGMAISTER, in their official and individual capacities,

      Defendants - Appellees.

No. 12-4190
(D.C. No. 1:10-CV-00022-DB)
(D. Utah)

---

**ORDER**
_____

Before **GORSUCH**, **BALDOCK**, and **BACHARACH**, Circuit Judges.
_____

Defendant Craig Storey has requested rehearing, arguing in part: (1) The panel opinion erroneously relied in part on sworn testimony before the Judicial Conduct Commission even though the testimony was deemed inadmissible; and (2) the evidence does not support Ms. Eisenhour's claim that Defendant Storey knowingly and intentionally committed sexual harassment by telling her about a

dream. On these issues, Defendant Storey has also requested en banc consideration. In addition, he seeks en banc consideration on the issue of qualified immunity.

The panel grants rehearing on the first issue, which involves reliance on the Commission testimony by Ms. Eisenhour. The remainder of the petition for panel rehearing is denied. In light of the partial grant of the petition, however, the panel vacates the opinion issued on December 31, 2013. The clerk is directed to substitute the attached amended decision and to file it contemporaneously with this order.

The petition was also transmitted to all of the judges of the Court who are in regular active service, and no member of the panel or a judge in regular active service has requested that the court be polled. Thus, the petition for en banc consideration is denied.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

March 12, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARCIA EISENHOUR,

      Plaintiff-Appellant,

v.

WEBER COUNTY, a political division of
the State of Utah; CRAIG D.
STOREY, CRAIG DEARDON,
KENNETH BISCHOFF, and JAN
ZOGMAISTER, in their official and
individual capacities,

      Defendants-Appellees.

12-4190

---

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 1:10-CV-00022-DB)**

---

April Hollingsworth of Hollingsworth Law Office, LLC, Salt Lake City, Utah, for
Plaintiff-Appellant.

Susan Black Dunn (Kathleen Liuzzi, on the briefs), of Dunn & Dunn, P.C., Salt
Lake City, Utah, for Defendants-Appellees Weber County, Craig Deardon,
Kenneth Bischoff, and Jan Zogmaister.

Linette B. Hutton of Winder & Counsel, PC, Salt Lake City, Utah, for Defendant-
Appellee Craig D. Storey.

---

Before **GORSUCH**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

**BACHARACH**, Circuit Judge.

Marcia Eisenhour sued Weber County, three of its county commissioners, and a state judge. According to Ms. Eisenhour, the judge (Craig Storey) sexually harassed her and the County retaliated against her for reporting the harassment. She claimed violations of Utah's Whistleblower Act, the First Amendment, the Fourteenth Amendment's Due Process and Equal Protection Clauses, and Title VII. The district court granted summary judgment to the defendants on all claims.

Ms. Eisenhour challenges this ruling and the district court's exclusion of her testimony on disciplinary proceedings involving the judge. We affirm: (1) the exclusion of Ms. Eisenhour's testimony during the disciplinary proceedings involving Judge Storey, and (2) the award of summary judgment on the claims against the County for violation of the Fourteenth Amendment's Equal Protection and Due Process Clauses, liability under Title VII, and violation of the Whistleblower Act relating to the refusal to rehire her. But, we conclude that genuine issues of material fact existed on: (1) the claims against the County under the Whistleblower Act and the First Amendment based on closing of the Justice Court, (2) the First Amendment claim against the County Commissioners, and (3) the claim against Judge Storey based on the Fourteenth Amendment's Equal

2

Protection Clause.  Accordingly, on these claims, we reverse the award of summary judgment.

### I.  Ms. Eisenhour's Evidence

The facts, presented in the light most favorable to Ms. Eisenhour as the party opposing summary judgment, are as follows:

#### A.  Ms. Eisenhour's Evidence of Sexual Harassment

Ms. Eisenhour worked for Weber County for 24 years, serving as the Court Administrator for the Weber County Justice Court under the direct supervision of Judge Storey.  According to Ms. Eisenhour, she was subjected to offensive touching and unreasonable questions about her activities away from work.

Judge Storey began acting inappropriately toward Ms. Eisenhour in early 2008. He became "touchy" and would often stand so close to her that his groin rubbed against her.  In addition to the touching, Judge Storey once called Ms. Eisenhour into his office and told her that he had a dream about her in which she was naked.  Ms. Eisenhour also found a poem by Judge Storey, which revealed his romantic feelings for her.

According to Ms. Eisenhour, she was also subjected to unreasonable demands about her activities.  Before 2008, she was allowed to work flexible hours and to miss work without obtaining prior approval.  In 2008, however, Judge Storey told Ms. Eisenhour that her frequent absences and unpredictable work patterns had become a problem and that, in the future, she could not miss work without his approval.  To obtain

3

approval, she would need to tell him where she was going, what she was doing, and whom she would be with. Perceiving the new policy as "possessive" and an attempt to control her, Ms. Eisenhour went to the County Attorney's Office and complained of sexual harassment by Judge Storey. Ms. Eisenhour was immediately placed on paid administrative leave pending an investigation.

### B. Evidence of an Investigation into Ms. Eisenhour's Allegations

The County launched an investigation into Ms. Eisenhour's allegations. Ms. Eisenhour told investigators about the poem, Judge Storey's dream about her, the inappropriate touching, and the new restrictions on missing work. The investigators also interviewed witnesses, including Judge Storey. But, Ms. Eisenhour testified that the investigators had never asked Judge Storey whether the allegations were true. Instead, she stated that the investigation focused on her work ethic and the quality of her work. Ms. Eisenhour eventually returned to work. When she did, she became part of the Clerk/Auditor's Department and was no longer supervised by Judge Storey. To minimize contact between Judge Storey and Ms. Eisenhour, the County moved Judge Storey's office to a different floor and designated a deputy court clerk as a liaison between Judge Storey and Ms. Eisenhour.

The County ultimately decided not to discipline Judge Storey and referred Ms. Eisenhour's complaints to Utah's Judicial Conduct Commission. The Commission investigated the incident, found no misconduct on Judge Storey's part, and dismissed the

4

allegations.  Ms. Eisenhour reacted by going to the press.  Two newspapers printed

articles about the allegations, stating that no action was being taken against Judge Storey.

### C.  Evidence Involving the County's Decision to Close the Justice Court

Between August and December 2009, the County Commissioners decided to close

the Justice Court, which meant the loss of Ms. Eisenhour's job.  The County maintains

that the Commissioners made the decision because of increasing revenue losses rather

than Ms. Eisenhour's allegations or her decision to go to the media.  After the court

closed, Ms. Eisenhour applied to the County for three vacant positions.  Unsuccessful,

Ms. Eisenhour lost not only her job but also the potential for retirement benefits.

Because Judge Storey had more years of service, however, he was able to retire with

benefits.

### II.  Ms. Eisenhour's Claims and the District Court's Ruling on Summary Judgment

On March 13, 2009, Ms. Eisenhour filed claims with Utah's Antidiscrimination

and Labor Division and the Equal Employment Opportunity Commission, alleging sexual

harassment and retaliation.  Still dissatisfied, she sued Judge Storey, Weber County, and

the County Commissioners, invoking Title VII, 42 U.S.C. § 1983, and the Utah

Whistleblower Act.[1]

The district court granted summary judgment to the defendants on all claims.  The

court reasoned that Judge Storey had qualified immunity and did not act with the intent to

---

[1]  Ms. Eisenhour also sued Judge Storey for intentional infliction of emotional distress, but she does not address that cause of action in this appeal.

violate Ms. Eisenhour's equal-protection rights. On the claims against the County, the district court held that it lacked jurisdiction over the Title VII claim, that the equal-protection claim failed because Judge Storey was not an official policymaker, that the First Amendment claim failed because Ms. Eisenhour had not engaged in protected speech, and that her due-process claim failed because she had not established a property interest in her employment.

III.    **Exclusion of Ms. Eisenhour's Deposition Testimony**

In deciding whether to grant summary judgment, the district court declined to consider Ms. Eisenhour's deposition testimony taken during the Judicial Conduct Commission's investigation. The parties agree that the issue is governed by Utah Code Ann. § 78A-11-112.[2] Appellant's App. vol. 1, at 318, 321-22, 366-69, 373-75. This statute provides in pertinent part that "[t]he transmission, production, or disclosure of any complaints, papers, or testimony in the course of proceedings before the commission . . . may not be introduced in any civil action." Utah Code Ann. § 78A-11-112(1). Ms. Eisenhour disagrees with the ruling, but we conclude that the court did not err.

---

[2]    Because the parties agree that the issue is governed by the Utah statute, we need not independently determine whether admissibility of Ms. Eisenhour's testimony was governed by federal law or state law. We note, however, that federal law would also render the testimony confidential if the investigation had involved a federal judge rather than a state judge. 28 U.S.C. § 360(a) (2006); *see also* 10th Cir. Rules for Judicial-Conduct & Judicial-Disability Proceedings, Rule 23(a)-(b), (d) (restricting disclosure of judicial-conduct investigations involving federal judges in the Tenth Circuit).

Our review is de novo.  *Cent. Kan. Credit Union v. Mut. Guar. Corp.*, 102 F.3d 1097, 1104 (10th Cir. 1996).  Under a plain reading of section 78A-11-112(1), testimony taken during the course of proceedings before the Judicial Conduct Commission cannot be introduced in a civil action.  The statute elsewhere authorizes disclosure under limited circumstances, but the issue here is whether the deposition transcript can be introduced, not whether it can be disclosed.  *See* Utah Code Ann. § 78A-11-112(3).  Thus, the district court had an obligation to exclude the testimony taken during the Judicial Conduct Commission's investigation.

## IV.    <u>Summary Judgment</u>

Because Ms. Eisenhour's deposition testimony was properly excluded, we do not consider it in our review of the summary-judgment ruling.  In this review, we agree with the district court that the statute of limitations barred Ms. Eisenhour's Whistleblower Act claim based on the County's refusal to rehire her, that the Title VII claim was unexhausted, that Ms. Eisenhour lacked a property interest for her due-process claim, and that the County did not incur liability for an equal-protection violation because Judge Storey was not a "policymaker" regarding the alleged acts.  But we also conclude that the district court erred in granting summary judgment:  (1) to Judge Storey on the § 1983 claim for an equal-protection violation, (2) to the County and County Commissioners on the § 1983 claim for violation of the First Amendment, and (3) to the County on the

7

Whistleblower Act claim based on closing of the Justice Court. In our view, the evidence created a genuine issue of material fact on these claims.

### A. Standard of Review

"We review the district court's grant of summary judgment de novo, employing the same legal standard applicable in the district court." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1311 (10th Cir. 2009). Summary judgment is appropriate only if the evidence reflects the absence of a genuine issue of material fact. *Id.* In making this assessment, we must view the evidence in the light most favorable to Ms. Eisenhour, the party opposing summary judgment. *Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994).

### B. Title VII Claim

Ms. Eisenhour asserts a claim under Title VII for retaliation. The district court held that it lacked jurisdiction over the claim because Ms. Eisenhour failed to exhaust administrative remedies. We agree.

Federal courts lack jurisdiction over Title VII claims that were not previously covered in a claim presented to the Equal Employment Opportunity Commission. *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). Ms. Eisenhour filed an EEOC claim for sexual harassment, but this claim did not refer to any of the retaliatory acts underlying the eventual cause of action under Title VII.

Ms. Eisenhour argues that she had no obligation to file a new EEOC claim because the new incidents were "reasonably related" to the claim she had made.

8

Although this argument might once have been viable, it is no longer. In 2003, we addressed a similar argument in *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003). There the plaintiff asserted a claim with the EEOC in July 1999 for retaliatory conduct that had occurred in May 1999. In the eventual court action, however, the plaintiff alleged retaliation for conduct taking place after the EEOC complaint. The issue in *Martinez* was whether the plaintiff failed to exhaust claims that post-dated the submission to the EEOC. The federal district court applied the old test in our circuit: whether the suit involved claims reasonably related to the allegations in the EEOC complaint. We held, however, that this test had been effectively overruled by the Supreme Court. *Martinez*, 347 F.3d at 1210 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)). Under the new test, each act of retaliation must be separately exhausted, even when acts that post-date the EEOC complaint reasonably relate to others presented to the EEOC. *Id.* at 1210-11.

The Plaintiff relies on two of our decisions issued prior to 2003: *Simms v. Oklahoma ex rel. Department of Mental Health*, 165 F.3d 1321, 1326 (10th Cir. 1999), and *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir. 1997). These decisions did suggest that exhaustion was unnecessary for claims related to those presented in an earlier EEOC complaint. *Simms*, 165 F.3d at 1326; *Seymore*, 111 F.3d at 799. But this view was unambiguously rejected in 2003 when we decided *Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003). *See, e.g.*, *Annett v. Univ. of Kan.*, 371

9

F.3d 1233, 1238 (10th Cir. 2004) (noting that *Seymore* has been effectively abrogated in our circuit).

Under the new rule, federal courts lack jurisdiction over incidents occurring after the filing of an EEOC claim unless the plaintiff files a new EEOC claim or otherwise amends her original EEOC claim to add the new incidents. *See* 29 C.F.R. § 1601.12(b). Because Ms. Eisenhour did not file a new EEOC claim or amend her submission to add the new incidents, the Title VII claim was unexhausted. As a result, we affirm the award of summary judgment to the County on the Title VII retaliation claim.

C.      **First Amendment Claim**

Ms. Eisenhour invokes the First Amendment, claiming that the County retaliated against her by closing the Justice Court when she spoke to the media about the Judicial Conduct Commission's investigation of Judge Storey. The County urged summary judgment on grounds that: (1) the communications to the media did not involve protected speech, and (2) it closed the Justice Court because of budgetary considerations rather than a retaliatory motive. We conclude that triable issues of fact existed and that the district court erred in granting summary judgment to the County.

When we are faced with a First Amendment claim by a public employee, the district court must balance the First Amendment interests of that employee, speaking as a concerned citizen, with the government's interests in "promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968). To conduct this balancing, the district court asks:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301-02 (10th Cir. 2009). While the first three inquiries involve matters of law, the last two are questions of fact. *Id.* at 1302.

In its motion for summary judgment and its appellate brief, the County addressed only the second and fourth factors. Viewing the evidence in the light most favorable to Ms. Eisenhour, we hold that her comments to the media involved protected speech and that she presented sufficient evidence for a reasonable fact-finder to infer that her comments were a motivating factor in the County's decision to close the Court.

The threshold question is whether Ms. Eisenhour's communications to the media were protected under the First Amendment. *See Wren v. Spurlock*, 798 F.2d 1313, 1317 (10th Cir. 1986). In deciding whether the communication is constitutionally protected,

11

we ask whether it relates to a matter of public concern (which is protected) or a matter of purely personal interest (which is not protected). *Wulf v. City of Wichita*, 883 F.2d 842, 856-57 (10th Cir. 1989). We must consider the speaker's motivation: Was the speech calculated to redress personal grievances or did it have some broader public purpose? *Starrett v. Wadley*, 876 F.2d 808, 816 (10th Cir. 1989).

Speech involves a public concern when the speaker intends to "'bring to light actual or potential wrongdoing or breach of public trust'" by a public official or to "disclose[] any evidence of corruption, impropriety, or other malfeasance" within a governmental entity. *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988) (quoting *Connick v. Myers*, 461 U.S. 138, 148 (1983)). When we evaluate whether speech concerns the public, we do so "by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

It is true, as the County argues, that Ms. Eisenhour cannot turn an "everyday employment dispute[]" into a constitutional violation. *Borough of Duryea, Pa. v. Guarnieri*, __ U.S. __, 131 S. Ct. 2488, 2501 (2011). But when Ms. Eisenhour spoke to the media, the subject-matter involved not only her employment dispute, but also her complaints about the work of the Judicial Conduct Committee. For example, the *Salt Lake Tribune* article included an allegation that the Utah Judicial Conduct Commission had failed to properly perform its duty by refusing to hear from eight witnesses during a closed-door hearing on the alleged harassment. Appellant's App. vol. 2, at 874. And this

12

commission was the investigative body entrusted by the public to uphold judicial integrity, which involves a public interest. *See Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978) (stating in another First Amendment context that "[t]he operations of the courts and the judicial conduct of judges are matters of utmost public concern"); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009) (stating that public confidence in elected judges is "a vital state interest").

As the County argues, one can reasonably infer that Ms. Eisenhour's motivation was personal, as well as public, for the article referred to her allegations against Judge Storey as well as the Commission's failure to hear from the eight witnesses. But a mixed motive is not fatal to her claim. *See Deutsch v. Jordan*, 618 F.3d 1093, 1100 (10th Cir. 2010) ("But the speaker's having a highly personal motive for a disclosure does not necessarily mean that the speech is not a matter of public concern."); *Wulf v. City of Wichita*, 883 F.2d 842, 860 n.26 (10th Cir. 1989) (noting that while speech was "linked to some degree to [the plaintiff's] personal dispute with [the defendant] on and to his dissatisfaction with his transfer to [another] [d]epartment, which he viewed as retaliatory, [the speech also] contain[ed] allegations of public concern").

The existence of an interest that is public, as well as private, is also borne out by the forum and timing of Ms. Eisenhour's speech. She chose to speak with the media, through a public forum, only *after* the Commission had allegedly failed to carry out its investigatory obligation. *See Considine v. Bd. of Cnty. Comm'rs of Cnty. of Adams,*

13

*Colo.*, 910 F.2d 695, 700 (10th Cir. 1990) (holding that statements were protected under the First Amendment in part because they had been made to the media, which suggested an intent to disclose wrongdoing by government officials); *see also Markos v. City of Atlanta*, 364 F.3d 567, 571 (5th Cir. 2004) (noting that the form of the plaintiff's speech was "quintessentially public as his comments appeared in the form of an article in the local newspaper").

The County relies heavily on *Workman v. Jordan*, 32 F.3d 475 (10th Cir. 1994), and *David v. City & Cnty. of Denver*, 101 F.3d 1344 (10th Cir. 1996). Acknowledging that our facts differ from those in *Workman* and *David,* the County cites these cases to "show that the Tenth Circuit has held that sexual harassment complaints address personal matters, not matters of public concern." Br. Weber County Appellees at 28. For the sake of argument, we can assume that sexual harassment does not involve a matter of public concern. Here, though, Ms. Eisenhour's statements to the media addressed not only sexual harassment, but also the failure of a governmental entity to properly carry out its public responsibilities. No such allegation existed in *Workman* or *David*.

Unlike the plaintiffs in *Workman* and *David*, Ms. Eisenhour presented evidence not only of sexual harassment, but also of a lapse by a public body charged with overseeing the judiciary. Viewing this evidence in the light most favorable to Ms. Eisenhour, we conclude that her statements to the media involved a matter of public

14

concern, as well as private concern. *See Pucci v. Nineteenth Dist. Court*, 628 F.3d 752 (6th Cir. 2010).[3]

Having held that the speech involves a public concern, we must address the County's argument that its closing of the Justice Court was not retaliatory. We reject this argument, concluding that the summary-judgment evidence would allow a reasonable fact-finder to conclude that the County terminated Ms. Eisenhour because of her comments to the media. This evidence includes: (1) the timing of the County's announcement that it would close the Justice Court, and (2) the court's profitability.

First, a reasonable fact-finder could conclude that the County decided to close the Justice Court soon after newspapers had published Ms. Eisenhour's allegations. The *Salt Lake Tribune* article, the first to be released, was published August 4, 2009. Appellant's App. vol. 2, at 873-74. Only one week later, County officials began discussing the possibility of closing the Court. Appellant's App. vol. 3, at 992-94 (e-mails between the County Attorney and County Commissioners, discussing the possibility of closing the Justice Court). And, according to County officials, they ultimately decided to close the

---

[3]    The issue in *Pucci* was similar. There, a deputy court administrator complained about one of the judges and was terminated. She sued the judge, claiming that he retaliated against her for exercising her First Amendment rights. *See Pucci*, 628 F.3d at 758-59. The judge argued that he was entitled to summary judgment because the deputy court administrator's complaint involved an internal complaint and did not constitute protected speech. *See id.* at 768. The Sixth Circuit Court of Appeals rejected the judge's argument, stating that "the nature of [the deputy court administrator's] complaints implicate[d] the propriety and legality of public, in-court judicial conduct, and render[ed] her speech of sufficient public gravity to warrant First Amendment protection." *Id.*

15

Court by December 2009. *Id.* at 974 (deposition of Jan Zogmaister), 1020 (deposition of Ken Bischoff); *id.* vol. 2, at 882-83 (deposition of Alan McEwan).

Second, the evidence creates a genuine issue of fact about the legitimacy of the County's explanation for closing the Justice Court. The County states that it was not financially feasible to continue operating the Court. But Ms. Eisenhour presents evidence that when the County decided to close the Justice Court, it was still generating a net profit. *Id.* vol. 3, at 982-88 (Weber County budget summaries of revenues and expenditures for 2007 to 2009). And the County's budget projections for 2009 showed that the Justice Court again expected to generate a net profit. *Id.* Indeed, the Defendants concede that the court earned $127,000 in net income in 2009. Br. Weber County Appellees at 7.

From the evidence, the fact-finder could reasonably connect: (1) the County's decision to close the Court, with (2) Ms. Eisenhour's remarks to the media.

Because the speech involves a matter of public concern and the fact-finder could reasonably infer a retaliatory motive, the district court erred by granting summary judgment to the County on the First Amendment claim.

### D. Qualified Immunity for the County Commissioners

On the First Amendment claim for retaliation, Ms. Eisenhour has also sued three county commissioners in their personal capacities. This claim is based on the

16

Commissioners' decision to close the Justice Court. Their motivation, according to Ms. Eisenhour, was to retaliate for her comments to the media.

Like the County, the Commissioners argued in the district court and in our court that Ms. Eisenhour's speech was not protected under the First Amendment and that the County closed the courthouse because of budgetary considerations rather than a retaliatory motive. Appellant's App. vol. 1, at 176-78; Br. Weber County Appellees at 30-33.[4]

As discussed above, these arguments involve factual issues turning on the resolution of conflicting evidence, thereby preventing summary judgment for the County. Because the Commissioners' argument for summary judgment was virtually identical to the County's, we conclude that the same issues of fact prevent summary judgment for the three county commissioners. Accordingly, we hold that the Commissioners were not entitled to summary judgment based on qualified immunity.

### E.    Whistleblower Act Claim

Ms. Eisenhour alleges that the County violated Utah's Whistleblower Act, which prohibits government employers from retaliating against employees who report employer misconduct. Utah Code Ann. § 67-21-3(1)(a). According to Ms. Eisenhour, the County violated the state law by closing the Justice Court and refusing to hire her. The County argues that Ms. Eisenhour waited too long to assert the claim and lacks evidence of

---

[4]    The district court did not rule on the issue of qualified immunity. *See* Appellant's App. vol. 1, at 385-86.

retaliation.  We agree with the County on the claim involving a refusal to rehire her.  But we disagree with the County on the claim involving closing of the Court.

### Timeliness

Under the Whistleblower Act, an employee must sue within 180 days of the alleged violation.  Utah Code Ann. § 67-21-3(1)(a).  Ms. Eisenhour maintains that her claim was timely, arguing that:  (1) the County failed to rehire her as an "Election Specialist" within the 180-day period, (2) she began the action on October 19, 2010, by notifying the County through the administrative process, and (3) her claim relates back to her original complaint.

First, Ms. Eisenhour argues that one of the retaliatory acts (the failure to hire her as an "Election Specialist") took place within the 180-day period.  But she did not adequately present this argument to the district court.  In her response to the summary-judgment motion, she simply included a short footnote:  "Even if this were not true [discussing relation-back of the first amended complaint], it is important that Ms. Eisenhour alleges that the County improperly failed to consider her vacancies that occurred after July 15, 2010.  *See, e.g.*, Additional Material Facts 45-51; Exhibits Q-S." R. vol. 1, at 219 n.4.  Because the Plaintiff did not adequately present this argument to the district court, it cannot be used to disturb the district court's ruling.  *See Allison v. Bank One-Denver*, 289 F.3d 1223, 1244 (10th Cir. 2002).

18

Ms. Eisenhour's second argument is invalid because it confuses her administrative notice with the filing of a civil action. The two are distinct, as the Utah Court of Appeals explained in *Thorpe v. Wash. City*, 243 P.3d 500 (Utah Ct. App. 2010). There, the plaintiff argued that his filing of a notice of an administrative claim qualified as the "bring[ing] [of] a civil action" under the Whistleblower Act; thus, he contended that the civil action began when he filed an administrative notice. Alternatively, he argued that he had tolled the statutory deadline by filing the notice. The Utah Court of Appeals rejected both arguments, holding that the 180-day period required the filing of an action in a court rather than the filing of a notice in an administrative agency. *Thorpe*, 243 P.3d at 504-06.

Like the plaintiff in *Thorpe*, Ms. Eisenhour waited more than 180 days from the alleged violation to assert a Whistleblower Act claim. Thus, under *Thorpe*, Ms. Eisenhour waited too long to assert a court claim under the Whistleblower Act even though she had submitted an administrative claim within 180 days.

Finally, Ms. Eisenhour argues that the Whistleblower Act claim related back to the original complaint, which was filed within the 180-day period. Though Ms. Eisenhour waited too long to assert a Whistleblower Act claim in federal court, she did sue on other legal theories within the 180-day period. And even though the initial complaint did not include a claim under the Whistleblower Act, she later amended the complaint to invoke the statute. This claim would be timely if it related back to the claims in the original

19

complaint. For the closing of the court, the claim did relate back; for the refusal to rehire her, the claim did not relate back.

Under Rule 15(c) of the Federal Rules of Civil Procedure, amendments to pleadings relate back to the original filing when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

In the original complaint, Ms. Eisenhour alleged retaliation through multiple acts, including the County's decision to close the Justice Court. The subsequent Whistleblower Act claim is based in part on the same factual allegation from the original complaint. Thus, a genuine issue of material fact exists on timeliness of the Whistleblower Act claim arising out of the court closing.

The refusal to rehire, however, did not arise out of the events in the original complaint because the vacancies did not open up until after Ms. Eisenhour had sued. As Ms. Eisenhour points out, she was not terminated until April 1, 2010, six weeks after she filed her original complaint. Thus, the eventual claims for the refusal to rehire could not have related back to the original complaint. Those aspects of the Whistleblower Act claim were not filed within the 180-day window; thus, they are time-barred.

**<u>Evidence of Retaliation</u>**

The County again denies a retaliatory motive for its decision to close the Justice Court, relying on budgetary considerations. As discussed above, however, the budgetary

explanation creates a genuine issue of material fact. Thus, the County was not entitled to summary judgment on the Whistleblower Act claim stemming from the closing of the Justice Court.

### F. Due Process Claim

Ms. Eisenhour argues that the County deprived her of a property interest in her job without due process of law. The district court held that Ms. Eisenhour had failed to establish a protected property interest. We agree.

For purposes of the Fourteenth Amendment's Due Process Clause, property interests must derive from some independent source, such as state law, contract, or other understandings that give rise to a claim of entitlement. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). When a plaintiff claims a property interest in her job, we ask whether she had "a legitimate expectation of continued employment," as defined by some independent source such as a contract for a fixed term or state law. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).

According to Ms. Eisenhour, she had a property interest in continued employment with the County. But she does not identify a source for this interest. Thus, she cannot rebut the presumption under Utah law that her employment with the County was at-will. *See Fox v. MCI Commc'ns Corp.*, 931 P.2d 857, 859 (Utah 1997). And "[a]t-will employees lack a property interest in continued employment." *Darr v. Town of Telluride*, 495 F.3d 1243, 1252 (10th Cir. 2007).

21

Ms. Eisenhour also contends that she had a property interest involving: (1) preferential consideration for future vacancies, and (2) early vesting for retirement benefits. This contention is not supportable even when the evidence is viewed favorably to Ms. Eisenhour.

She argues that the governing policies entitled her to a new job with the County. For this argument, she points to a provision in the Weber County Personnel Policies and Procedures Manual: "Tenured employees who are separated in reductions-in-force shall be placed on the reappointment register and may be reappointed without examination to any vacancies for which they are qualified." Appellant's App. vol. 2, at 623. But Ms. Eisenhour had no right to appear on the reappointment register, for the County did not implement a reduction-in-force.

A reduction-in-force occurs when "[a] department discontinues the use of [an] identifiable position." *Id.* at 611. A reduction-in-force does not occur when, as here, an entire department is eliminated. *See id.* Therefore, Ms. Eisenhour did not have a property interest in preferential consideration for future vacancies.

She also lacked an entitlement to vest early for retirement benefits. Under Utah law, a public employee qualifies to buy early retirement after accumulating 25 years of service. Utah Code Ann. § 49-12-701(1)(a). When the Justice Court closed, Ms. Eisenhour had three more months before she could obtain the required 25 years.

22

Therefore, Ms. Eisenhour lacked a property interest in the opportunity for early retirement.

### G. Equal-Protection Claim Against the County

Ms. Eisenhour asserts that the County violated her right to equal protection, and the district court granted summary judgment to the County on the ground that Judge Storey was not an official policymaker. We agree with the district court's decision.

"[A] municipality can be liable under Section 1983 for the acts of a municipal official only when the official possesses 'final policymaking authority' to establish municipal policy with respect to the acts in question." *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). We apply this test to the two types of alleged acts: (1) Judge Storey's inappropriate touching, and (2) his establishment of a rule that Ms. Eisenhour had to obtain prior approval before missing work. Accordingly, we must decide whether Judge Storey had final policymaking authority for these acts.

In determining whether Judge Storey had final policymaking authority, we consider two factors: (1) "whether his 'discretionary decisions [were] constrained by general policies enacted by others,'" and (2) "whether those 'decisions [were] reviewable by others.'" *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1228 (10th Cir. 2008) (quoting *Dill v. City of Edmond*, 155 F.3d 1193, 1211 (10th Cir. 1998)). These factors involve questions of law. *Id.* at 1224.

Judge Storey lacked policymaking authority to touch Ms. Eisenhour inappropriately under the County's sexual harassment policy. That policy unambiguously prohibited inappropriate touching. Appellant's App. vol. 1, at 164. Thus, Judge Storey's decision to touch Ms. Eisenhour was "constrained by [a policy] enacted by others." *See Milligan-Hitt*, 523 F.3d at 1228. Under that policy, Judge Storey's conduct was subject to review—and was in fact reviewed—by both the County and the Judicial Conduct Commission.

Ms. Eisenhour argues that the County implicitly gave Judge Storey the authority to touch her inappropriately by failing to ask Judge Storey whether he had done so. This argument confuses what the County did before and after the alleged touching. Even if the County failed to properly respond after-the-fact, this failure would not suggest that the County had authorized Judge Storey to grope Ms. Eisenhour before-the-fact.

Although Judge Storey arguably had policymaking authority with regard to scheduling of his staff, Ms. Eisenhour fails to explain how Judge Storey's work-leave policy amounted to sexual harassment or otherwise violated her equal-protection rights. On its face, Judge Storey's policy would not have constituted a denial of equal protection.

To Ms. Eisenhour, Judge Storey implemented the policy as a way to hound her. But the policy itself did not constitute sexual harassment. As a result, the County cannot incur liability based on the judge's adoption of a policy requiring Ms. Eisenhour to account for her time when she was missing work.

24

Judge Storey lacked policymaking authority to inappropriately touch Ms. Eisenhour, and his monitoring of her whereabouts (when missing work) did not violate the Equal Protection Clause. As a result, the County was entitled to summary judgment on the equal-protection claim.

### H.        Equal-Protection Claim Against Judge Storey

Ms. Eisenhour also asserts an equal-protection claim against Judge Storey. The district court concluded that Judge Storey is entitled to qualified immunity and that he did not act with the required intent. Judge Storey defends these conclusions, adding that Ms. Eisenhour did not show she had been treated differently from a similarly situated individual. We reverse the district court's grant of summary judgment to Judge Storey, concluding that he is not entitled to qualified immunity, that there is a fact-issue about whether Judge Storey inappropriately touched Ms. Eisenhour, and that Ms. Eisenhour had no requirement to show she was treated differently from a similarly situated individual. To overcome a defense of qualified immunity, a plaintiff must show that: (1) the defendant's conduct violated the law, and (2) the law was clearly established when the violation occurred. *Albright v. Rodriguez*, 51 F.3d 1531, 1534-35 (10th Cir. 1995). If Ms. Eisenhour makes this showing, the burden shifts to Judge Storey to establish that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Id.* at 1535. We hold that Ms. Eisenhour made the threshold showing and that issues of fact precluded summary judgment.

25

In *Starrett v. Wadley*, 876 F.2d 808 (10th Cir. 1989), we recognized that sexual harassment could constitute an equal-protection violation. The facts in *Starrett* resemble those in Ms. Eisenhour's sworn account. The *Starrett* plaintiff claimed that her supervisor had made sexual advances, asking to meet at secluded locations after hours, pinching her buttocks, placing his arm on her leg, and making obscene gestures. *Id.* at 814-15. We held that under those facts, a reasonable jury could conclude that the supervisor's conduct discriminated against the plaintiff because of her sex, thereby depriving her of equal protection. *Id.* at 815.

*Starrett* governs because Ms. Eisenhour presents evidence that would also allow a reasonable jury to infer that she had been discriminated against because of her sex. She states under oath that Judge Storey wrote an inappropriate poem about her, told her that he had a dream about her in which she was naked, and rubbed his groin against her. Under *Starrett*, this evidence would allow a reasonable jury to conclude that Judge Storey violated her right to equal protection.

And if Judge Storey committed an equal-protection violation, it would have been "clearly established" by our decision in *Starrett*. *See Lankford v. City of Hobart*, 27 F.3d 477, 480 (10th Cir. 1994) (stating that "with this court's opinion in *Starrett v. Wadley . . .* it became clearly established that sexual harassment can constitute a violation of equal protection and give rise to an action under 42 U.S.C. § 1983").

26

Thus, Ms. Eisenhour has made her two-part showing, and the burden shifts to Judge Storey to establish that there is no genuine issue of material fact. Judge Storey cannot meet this burden.

The district court reached a contrary conclusion based on inapplicable Supreme Court decisions and inappropriate reliance on the County's evidence that Ms. Eisenhour had not complained about Judge Storey.

In reaching its decision, the district court relied on two Supreme Court cases: *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Daniels v. Williams*, 474 U.S. 327 (1986). The district court's reliance on these cases is misplaced. *City of Canton* is off-point; it identifies the mental state necessary to hold a government employer liable based on a failure to train theory. 489 U.S. at 388. *Daniels* explains that § 1983 liability requires a deliberate act. 474 U.S. at 331. But the district court fails to explain why the acts Ms. Eisenhour testified about— discussing a dream in which she was naked and standing so closely to her that his groin rubbed against her—cannot be characterized as deliberate.

The district court also noted evidence that Ms. Eisenhour had not complained about Judge Storey's behavior. But this evidence would not have precluded liability and was disputed by Ms. Eisenhour. Our cases do not suggest that a plaintiff's failure to report harassment precludes liability for an equal-protection violation. *See Lankford v. City of Hobart*, 27 F.3d 477, 480-81 (10th Cir. 1994); *Starrett v. Wadley*, 876 F.2d 808, 814-15 (10th Cir. 1989). In any event, Ms. Eisenhour presented evidence that she had

27

complained about Judge Storey's behavior when she reported his sexual harassment to the County Attorney in July 2008.

Finally, Judge Storey contends that Ms. Eisenhour's claim fails because she did not show that she had been treated differently from a similarly situated individual. We reject this argument. In cases involving an equal-protection violation based on sexual harassment, we have not required the plaintiff to show she was treated differently from a similarly situated individual. *See Lankford*, 27 F.3d at 480-81; *Noland v. McAdoo*, 39 F.3d 269, 272-73 (10th Cir. 1994); *Woodward*, 977 F.2d at 1400-01; *Starrett*, 876 F.2d at 814-15. It is enough that the plaintiff presents sufficient evidence that the defendant discriminated against her because of her sex, thereby depriving her of the right to equal protection of the laws. *See Starrett*, 876 F.2d at 814-15.

## V.    **Conclusion**

For the reasons stated above, we affirm the award of summary judgment on Ms. Eisenhour's claims against the County under the:  (1) Whistleblower Act for a refusal to rehire her, (2) Title VII, and (3) § 1983 based on a deprivation of due process and denial of equal protection. We also hold that the district court properly excluded Ms. Eisenhour's testimony taken during the judicial-misconduct investigation. But we agree with Ms. Eisenhour that genuine issues of fact precluded summary judgment on:  (1) her § 1983 claim against the County and the County Commissioners based on the First Amendment, (2) the Whistleblower Act claim against the County based on the court

28

closing, and (3) the § 1983 claim against Judge Storey based on the Fourteenth

Amendment's Equal Protection Clause.  Accordingly, we remand to the district court

with instructions to vacate the award of summary judgment on these claims.