**NOT PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3488
_____

WILLIAM A. MORGAN,
                                        Appellant

v.

COVINGTON TOWNSHIP; SGT BERNARD KLOCKO, Individually;
THOMAS M. YERKE, Township Chairman, Individually


_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. No. 3-09-cv-00651)
District Judge: Honorable A. Richard Caputo
_____

Submitted Under Third Circuit LAR 34.1(a)
March 28, 2014
_____

Before: FUENTES and SHWARTZ, *Circuit Judges*, and ROSENTHAL, *District Judge*.[*]

(Filed: April 16, 2014)
_____

OPINION
_____

_____

[*] The Honorable Lee H. Rosenthal, United States District Judge for the Southern
District of Texas, sitting by designation.

ROSENTHAL, *District Judge*

Plaintiff-Appellant William Morgan filed two lawsuits alleging that his disciplinary suspension and termination from his job as a police officer with the Covington Township Police Department violated his due process and First Amendment rights. Morgan's first lawsuit was tried, and the jury returned a defense verdict. The District Court dismissed the second lawsuit as precluded by the result in the first. We affirmed the judgment in the first lawsuit but reversed and remanded the dismissal of the second. That suit proceeded to trial. The District Court granted the defendants' motion for judgment as a matter of law at the close of Morgan's case-in-chief. Morgan then filed this appeal. We will affirm.

I

Because we set out much of the relevant background in Morgan's first appeal and the parties are familiar with the subsequent events, we briefly describe the facts and procedural history only as needed to decide the issues now on appeal.

Morgan began working as a police officer for the Covington Township Police Department in 2001. On August 16, 2007, Defendant-Appellee Sgt. Bernard Klocko sent a letter to the Covington Township Board of Supervisors describing two incidents involving Morgan. The first incident involved Morgan's alleged attempt to interfere in another officer's investigation of an altercation between Morgan's ex-girlfriend and a

security guard. Sgt. Klocko accused Morgan of trying to coerce the guard into dropping her complaint against the ex-girlfriend and of interfering with the police department's investigation. Sgt. Klocko's letter alleged that this amounted to "official oppression, intimidation of witnesses or victims, and/or retaliation against witnesses, victim, or party." App. 399. The second incident involved Morgan's alleged unauthorized entry into the apartment of a more recent ex-girlfriend. Sgt. Klocko accused Morgan of "conduct unbecoming an officer." *Id.* Sgt. Klocko also stated that Morgan was "inefficient," "neglectful," and "disobedient" in performing his duties. *Id.* Sgt. Klocko recommended that the Board suspend Morgan without pay and then terminate his employment.

The next day, the Township sent Morgan a letter indefinitely suspending him and notifying him that the Township was considering employment termination. The letter notified Morgan of his right to respond to the charges in writing, to request a public hearing, and to be represented by counsel.

In a letter dated August 22, 2007, Morgan's lawyer requested a public hearing on Sgt. Klocko's accusations and the Board's suspension. On August 24, 2007, the Board told Morgan that Sgt. Klocko's official-oppression charge had been forwarded to the Pennsylvania State Police and that he would be on administrative leave with pay until the investigation was complete. The state police declined to pursue the charge. Sgt. Klocko

3

then referred the matter to the Lackawanna County District Attorney, who also declined to pursue it.

On September 28, 2007, the Board informed Morgan that no criminal charges would be brought because of the incidents described in Sgt. Klocko's letter but that someone else had made a new complaint against him. The Township reinstituted the disciplinary charge and continued Morgan's paid administrative leave. The Board informed Morgan that the Township was considering employment termination and again offered him an opportunity to respond in writing and to appear at a public hearing.

On October 27, 2007, Morgan sued the Township; Thomas Yerke, the Chair of its Board of Supervisors; and Sgt. Klocko. *See Morgan v. Covington Twp.,* 3:07-cv-1972, 2009 WL 585480, at *1–*4 (M.D. Pa. Mar. 6, 2009) ("*Morgan I*"). In the complaint, Morgan alleged that the defendants had retaliated against him for exercising his First Amendment right to petition because two days after the August 2007 letter from his lawyer requesting a public hearing on his suspension, the official-oppression allegation was sent to the state police for investigation and possible criminal prosecution. Morgan also alleged that he had been denied a hearing, in violation of his procedural due process rights, and that the Township had failed to train its employees properly.

The public hearing Morgan requested occurred as scheduled on November 5, 2007. Morgan's lawyer appeared, but Morgan did not. Because the Board wanted to hear from Morgan, it scheduled a second public hearing, for January 15, 2008. Morgan

4

again failed to appear. The Board voted four to one to terminate Morgan after that hearing.

Morgan's lawsuit proceeded. More than a year after his termination but just two weeks before the scheduled jury trial, on April 9, 2009, Morgan sought to amend his complaint to add his job termination as another basis for the retaliation claim. The District Court denied Morgan leave to amend because the case was so close to trial. Morgan promptly filed his second lawsuit ("*Morgan II*"), naming the same defendants and adding his job termination to the First Amendment retaliation claim.

The retaliation claim in *Morgan I* was tried to a jury in April 2009.[1] The jury found that the Township and Board Supervisor Yerke, but not Sgt. Klocko, had retaliated against Morgan for exercising his First Amendment right to petition. But the jury also found that the Township and Yerke would have suspended and terminated Morgan even if he had not requested a hearing. The result was a defense verdict.

In November 2009, the District Court dismissed *Morgan II* based on the *res judicata* effect of *Morgan I*. On appeal, we affirmed the judgment in *Morgan I* but reversed the dismissal in *Morgan II* and remanded. We "conclude[d] that the District Court should not have dismissed" *Morgan II* because the termination he contested occurred after he had filed *Morgan I* and "*res judicata* does not bar claims that are

---

[1] The District Court had granted summary judgment dismissing the due process claim on the grounds that Morgan was not entitled to a hearing before his suspension with pay and that he had failed to identify a public accusation of a crime that could support a reputational-harm claim.

predicated on events that postdate the filing of the initial complaint." *Morgan v. Covington Twp.*, 648 F.3d 172, 178 (3d Cir. 2011).

On remand, *Morgan II* proceeded to trial. At the close of Morgan's case-in-chief, the defendants moved for judgment as a matter of law. The District Court granted the motion, relying on *Borough of Duryea v. Guarnieri*, 131 S.Ct. 2488 (2011), to conclude that neither Morgan's request for a public hearing nor the filing of the first lawsuit was protected under the First Amendment because neither addressed a matter of public concern. This appeal followed.

## II

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(2), and we have appellate jurisdiction under 28 U.S.C. § 1291. "Our review of a judgment as a matter of law under Rule 50(a) is plenary." *Brownstein v. Lindsay*, 742 F.3d 55, 63 (3d Cir. 2014) (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). "'A motion for judgment as a matter of law under Federal Rule [of Civil Procedure] 50(a) should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law.'" *Id.* (quoting *Beck*, 89 F.3d at 971).

## III

Morgan states in his brief that he raises six appellate issues, but five raise a single question: whether the District Court erred when it concluded that Morgan's request for a public hearing and his filing of the *Morgan I* complaint were not protected activities under the Petition Clause of the First Amendment.

A public employee may bring a retaliation claim pursuant to 42 U.S.C. § 1983 if his public employer retaliated against him for exercising his constitutional rights. *See Guarnieri*, 131 S.Ct. at 2494. "Among other rights essential to freedom, the First Amendment protects 'the right of the people . . . to petition the Government for a redress of grievances.'" *Id.* at 2491 (quoting U.S. Const., Amdt. 1). "The right of a public employee under the Petition Clause is a right to participate as a citizen, through petitioning activity, in the democratic process. It is not a right to transform everyday employment disputes into matters of constitutional litigation in the federal courts." *Id.* at 2501. "[W]hether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the petition], as revealed by the whole record.'" *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147–48, & n.7 (1983)).

The District Court concluded that the evidence failed to show that Morgan had requested a public hearing and filed *Morgan I* to "participat[e in] the democratic process as a citizen to call attention to matters of public interest, public concern, matters of performance of public officials in terms of corruption, malfeasance in office" or similar issues. App. 358. The District Court carefully examined the content and context of both

7

the letter from Morgan's counsel requesting a public hearing on the suspension and of the complaint filed in *Morgan I*. The letter requesting the hearing made only a "vague reference to misconduct," and the context "was purely in the form of [Morgan's] job." App. 358–59. The *Morgan I* complaint did "not contain any indication of participation as a citizen in the democratic process in terms of this petition but rather to get [his] job back. That's what it was about." App. 359. The District Court noted Morgan's own repeated testimony that "all he wanted was his job back." *Id.* The District Court granted the defendants' motion for judgment as a matter of law because the form, content, and context of the actions Morgan asserted as the bases for his retaliation claim addressed only matters of private concern. Our review of the record and the law reveals no error.

In *Guarnieri*, the Supreme Court rejected our precedents holding that a public employee who has filed a lawsuit or formal complaint is protected from retaliation under the Petition Clause even if the suit or complaint addressed only private concerns. The law in other circuits was contrary to our approach. Other circuits followed the rule that "whether the grievance is considered under the Speech Clause or the Petition Clause, the government employer is entitled to take adverse action against the employee unless the dispute involves a matter of public concern." *Id.* at 2493. The Supreme Court agreed with our sister circuits that the same framework applies to both Speech Clause and Petition Clause claims by public employees. "If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment

8

interest must give way, as it does in speech cases." *Id*. at 2500. While the Petition Clause protects a public employee's use of the courts, a First Amendment retaliation claim under the Petition Clause will not succeed unless the employee used the courts to address matters of public concern.

The complaints filed in both *Morgan I* and *Morgan II* alleged that Sgt. Klocko's official-misconduct allegation against Morgan was referred to the state police and a county prosecutor for investigation in retaliation for Morgan's internal request for a public hearing on his suspension. But the record shows that Morgan did not even attend the two public hearings the Board held, much less use them to present his views. The content and context of the letter from Morgan's counsel requesting a public hearing did not seek public communication in order to advance a point of view or concern.

Morgan argues that his *Morgan I* complaint addressed matters of public concern because it "made allegations of abuse of power and violations of [his] constitutional rights." Blue Br. at 19. He overstates. The *Morgan I* complaint was brief. It alleged that the defendants' decisions about Morgan's employment were unfair and retaliatory toward Morgan. The *Morgan I* complaint did not allege that the Township's internal procedures for handling complaints lodged against its police officers were generally abusive or retaliatory. The complaint did not communicate information to the public other than about the specific circumstances of Morgan's own job. The complaint did not "advance a political or social point of view." *See Guarnieri,* 131 S.Ct. at 2501.

9

A complaint arising out of public employment need not include "indications that there is a systemic problem interfering with the public agency's performance of its governmental functions" to address a matter of public concern. *Azzaro v. Cnty. of Allegheny*, 110 F.3d 968, 980 (3d Cir. 1997) (en banc). Morgan did not have to allege that the Township's actions reflected systemic problems causing interference with the Township's or the police department's performance, or that the actions reflected repeated or pervasive abuses of authority. *See id.* But Morgan had to do more than allege retaliation arising out of the unusual circumstances of his individual employment dispute. *See Feldman v. Philadelphia Housing Auth.*, 43 F.3d 823, 829 (3d Cir. 1994) ("Thus, in order to determine whether [the] speech [or petition] was protected, we must first determine if [it] related to matters of public concern, or constituted merely personal grievances . . . .").

Morgan correctly argues that his focus on what he experienced in his employment and on the relief he sought from the court does not preclude a finding that he addressed matters of public concern. The petitioner's "motive, while often a relevant part of the context of the [petition], is not dispositive in determining whether a particular statement relates to a matter of public concern." *Azzaro*, 110 F.3d at 978. But recognizing that a petitioner may have mixed motives in filing a petition does not remove the need to show that the petition addressed matters of public concern. *Guarnieri*, 131 S.Ct. at 2500. Morgan failed to make this showing. *See Singer v. Ferro*, 711 F.3d 334, 343 (2d Cir.

10

2013) ("As explained above, we conclude that the corruption alleged here is not the sort that is of 'general interest to the public.' And, even if it were, the thrust of this lawsuit is not towards remediating this corruption, but towards the 'entirely personal' relief of monetary damages for what are, at bottom, allegations of wrongful treatment as employees and wrongful termination.").

The Board decided to terminate Morgan's employment after he twice failed to attend the public hearing he requested. The termination decision came after *Morgan I* was filed but before it was tried. The *Morgan II* complaint added the allegation that the job termination was in retaliation for the filing of *Morgan I*. The fact that *Morgan I* asserted a First Amendment violation does not mean that the lawsuit addresses a matter of public concern. *See Singer*, 711 F.3d at 343. The First Amendment retaliation claim in *Morgan I* was limited to the claim that Sgt. Klocko's official-oppression complaint against Morgan was referred to two agencies charged with investigating possible criminal prosecution, in retaliation for Morgan's request for the public hearing the Board had offered. The fact that Morgan filed a lawsuit claiming retaliation by his employer in violation of the First Amendment does not transform the lawsuit into one raising a matter of public concern.

Morgan primarily relies on the cases following *Azzaro v. County of Allegheny*, 110 F.3d at 978. In *Azzaro*, "[w]e addressed the question of whether a public employee's speech regarding sexual harassment can constitute protected speech, where the plaintiff, a

former Allegheny County employee, was fired after reporting that she was sexually harassed by an assistant to the County Commissioner." *Montone v. City of Jersey City*, 709 F.3d 181, 193 (3d Cir. 2013) (internal citation omitted). Applying *Connick,* "we noted that the key to the 'public concern' inquiry is 'whether expression of the kind at issue is of value to the process of self-governance.'" *Id.* (quoting *Azzaro*, 110 F.3d at 977). We observed that an allegation of racial discrimination in the assignment of school personnel was a matter of public concern under *Connick* and extended that reasoning to conclude that alleged gender discrimination by public officials under similar circumstances was also a matter of public concern. *Id.* (quotation omitted). This is not a case in which a public official was alleged to have retaliated against an employee on a basis that could well apply to others, such as retaliation for complaining about gender inequality in the workplace, *id.*, sexual harassment, *Azzaro*, 110 F.3d at 977, or racial discrimination, *id*. And in *Montone* and *Azzaro*, we were careful to note "that not 'all public employee complaints about sexual harassment are matters of public concern,' and that examination of 'all of the surrounding circumstances' is required when making such a determination.'" *Montone*, 709 F.3d at 193–94 (quoting *Azzaro*, 110 F.3d at 980). The content and context of Morgan's request for a public hearing and his lawsuit were limited to his particularized employment circumstances and grievances.

Accordingly, we agree with the District Court's conclusion that the content and context of the letter from Morgan's lawyer requesting a public hearing and the filing of

12

*Morgan I* addressed matters of personal and private concern—Morgan's allegations that his former employer had unfairly suspended him with pay after he was accused of official misconduct and poor performance; sought a decision as to whether his conduct warranted criminal prosecution; and then terminated his employment.

Morgan also argues that the fact that local newspapers ran stories about his suspension, termination, and lawsuit is strong evidence that he was pursuing a matter of public concern. We have "taken additional notice of statements that are disseminated in public media or delivered in an official proceeding" as "indications that the substance of the message ha[d] significant importance to the community." *See Pro v. Donatucci*, 81 F.3d 1283, 1297 (3d Cir. 1996) (internal citation omitted) (citing *Holder v. City of Allentown*, 987 F.2d 188, 195–96 (3d Cir. 1993); *Czurlanis v. Albanese*, 721 F.2d 98, 104 (3d Cir. 1983)). As Morgan concedes, the fact of a news story has only "some relevance" to whether the issue is a matter of public concern. Blue Br. at 12 (quoting *Watters v. City of Philadelphia*, 55 F.3d 886, 895 (3d Cir. 1995)). We have been clear that it is the content and context of the news coverage that matters. *Watters*, 55 F.3d at 895.

The cases Morgan cites are distinguishable. In *Holder,* 987 F.2d at 195–96, we addressed allegations of retaliation for the content of a plaintiff's published letter to the editor. In *Monsanto v. Quinn*, 674 F.2d 990, 997 (3d Cir. 1982), we also addressed alleged retaliation based on the content of letters that the local news media published. In this case, by contrast, Morgan's argument is that the mere fact of news coverage about

13

the employment dispute makes it a matter of public concern. And unlike the plaintiffs in the cases Morgan cited, Morgan did not use the news coverage to disseminate or advance his views. *See Eisenhower v. Weber Cnty.*, – F.3d –, –, 2014 WL 958468, at \*5–\*6 (10th Cir. Mar. 12, 2014). The newspaper articles that Morgan submitted state that he did not talk to reporters or speak in a forum where reporters were present. App. 417 ("Officer Morgan could not be reached for comment. His attorney . . . said she could not comment on information from the case that has not been released to the public."); App. 419 ("Morgan did not attend Tuesday night's hearing. Efforts to reach him after the meeting were unsuccessful.").

The record in this case shows that the newspaper coverage of Morgan's suspension and firing reported "the personal gripe of one employee." *Watters*, 55 F.3d at 895; *see also Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 133 (1st Cir. 1997); *Zorzi v. Cnty. of Putnam*, 30 F.3d 885, 897 n. 11 (7th Cir. 1994); *Wilson v. Littleton*, 732 F.2d 765, 769 (10th Cir. 1984). The fact of newspaper coverage did not transform this employment dispute and lawsuit into matters of public concern.

Morgan also argues that whether his lawsuit raised an issue of public concern is a fact issue for the jury. This argument is unpersuasive. Whether a petition raises an issue of public concern is a question of law for the court. *Baldassare v. State of N.J.*, 250 F.3d 188, 195 (3d Cir. 2001).

14

Finally, Morgan argues that the jury's finding in *Morgan I* that his request for a public hearing was a protected activity precluded the District Court from concluding otherwise in *Morgan II*. This argument is also unpersuasive. When the District Court instructed the jury in *Morgan I, Guarnieri* had not been decided. Under this circuit's law at the time, a defendant was not entitled to an instruction that a Petition Clause retaliation claimant had to prove that the activity addressed a matter of public concern. *Guarnieri* changed the law in this circuit. The change meant that preclusion did not apply to prevent the District Court from deciding whether Morgan's request for a public hearing on his suspension, which the complaints in both *Morgan I* and *Morgan II* raised, and the filing of the *Morgan I* lawsuit, addressed matters of public concern. *See Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Ltd.*, 63 F.3d 1227, 1237 (3d Cir. 1995) ("The exception to the application of issue preclusion for unmixed questions of law is satisfied [where] . . . a new determination is warranted in order to take account of an intervening change in the applicable legal context . . . ." (quotation omitted)); *see also Montana v. United States*, 440 U.S. 147, 159 (1979); *C.I.R. v. Sunnen*, 333 U.S. 591, 599–600 (1948). For these reasons, the District Court's order granting judgment in the Appellees' favor was warranted.

The Township has moved for sanctions, arguing that this appeal was frivolous and in bad faith. Rule 38 gives us the discretion to "award just damages and single or double costs to the appellee." Fed. R. App. P. 38. "We apply an objective standard to determine

15

whether an appeal is frivolous." *Quiroga v. Hasbro, Inc.*, 943 F.2d 346, 347 (3d Cir. 1991) (citing *Hilmon Co. v. Hyatt Int'l*, 889 F.2d 250, 253 (3d Cir. 1990)). "An appeal is frivolous if it is wholly without merit." *Id.* (citation omitted). "The test is whether, following a thorough analysis of the record and careful research of the law, a reasonable attorney would conclude that the appeal is frivolous." *Hilmon*, 889 F.2d at 254. A jury, a prior panel of this court, a district judge, and this panel have all found the appellant's claims unpersuasive. But unsuccessful and even weak claims and arguments on appeal are not the same as frivolous claims or arguments. In part because of our prior remand, we do not find that Morgan's appeal was frivolous and we decline to impose sanctions.[2]

We affirm the District Court's judgment and deny the sanctions motion.

---

[2] The Township seeks sanctions under 28 U.S.C. § 1927 and 42 U.S.C. § 1988(b) as well as Rule 38. Sanctions under § 1927 may only be awarded upon "a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *LaSalle Nat'l Bank v. First Conn. Holding Grp., LLC,* 287 F.3d 279, 289 (3d Cir. 2002). Moreover, a prevailing defendant may be awarded attorney's fees under 42 U.S.C. § 1988(b) only "'upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation.'" *Barnes Found. v. Twp. of Lower Merion*, 242 F.3d 151, 158 (3d Cir. 2001) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416–17, 421 (1978)). For the reasons set forth in the text, sanctions under § 1927 or § 1988 for pursuing this appeal are not warranted.