**UNITED STATES of America, ex rel. The CITIZEN BAND POTAWATOMI INDIAN TRIBE OF OKLAHOMA, Plaintiff–Appellant,**

v.

**ENTERPRISE MANAGEMENT CONSULTANTS, INC., Defendant–Appellee.**

**No. 88–2311.**

United States Court of Appeals, Tenth Circuit.

Aug. 28, 1989.

Michael Minnis (David McCullough with him, on the brief) of Michael Minnis & Associates, P.C., Oklahoma City, Okl., for plaintiff-appellant.

Randy Dean Witzke (David W. Edmonds with him, on the brief), Oklahoma City, Okl., for defendant-appellee.

Before LOGAN, McWILLIAMS, and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

The Citizen Band Potawatomi Indian Tribe of Oklahoma (Tribe) brought this action against Enterprise Management Consultants, Inc. (EMCI) seeking a declaration that two bingo management contracts between the parties are void. Pending reso-

lution of the merits, the Tribe ejected EMCI from the bingo enterprise premises. The district court granted EMCI's motion for a preliminary injunction ordering the Tribe to return the premises and prohibiting it from interfering with EMCI's operation of the bingo enterprise. The Tribe appealed and obtained an emergency stay of the district court's order under Rule 8 of the Federal Rules of Appellate Procedure. We now vacate the injunction.

## I.

### LITIGATION BACKGROUND

The instant litigation is but one manifestation of a long and acrimonious relationship between EMCI and the Tribe, which has generated three lawsuits and two petitions for writs. EMCI originally operated a bingo game on Tribal land under a management agreement executed in 1982. In 1984, EMCI sued the Tribe to enjoin it from interfering with EMCI's performance under the 1982 contract. In 1985, while that action was being pursued in district court, the parties entered into a second management agreement and EMCI dismissed its suit with prejudice.

The Tribe subsequently filed the instant action. The Tribe alleged that the contracts are, and always have been, null and void because they were not approved under 25 U.S.C. § 81 (1982), which governs all agreements "made by any person with any tribe of Indians ... for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands." *Id.* Section 81 requires that any agreement to which it pertains must "bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs indorsed upon it." *Id.* Section 81 further provides:

"All contracts or agreements made in violation of this section shall be null and void, and all money or other thing of value paid to any person by any Indian or tribe, or any one else, for or on his or their behalf, on account of such services, in excess of the amount approved by the Commissioner and Secretary for such services, may be recovered by suit in the name of the United States in any court of the United States, regardless of the amount in controversy; and one-half thereof shall be paid to the person suing for the same, and the other half shall be paid into the Treasury for the use of the Indian or tribe by or for whom it was so paid."

*Id.* The Tribe sought an accounting of money obtained by virtue of the management agreements, as well as rent allegedly due under a business lease between the parties which had been approved by the Secretary. The Tribe also sought to have the lease declared terminated, and to obtain injunctive relief restraining EMCI from operating under the lease.

EMCI counterclaimed, seeking a judgment ordering the Tribe to submit the 1985 agreement to the appropriate federal officials for approval or to renegotiate the contract, and to indemnify it for any state sales tax due. In December 1986, the district court ordered the parties to submit the 1985 contract to the Bureau of Indian Affairs (BIA) for approval, ordered the BIA to act upon it within sixty days, and dismissed EMCI's counterclaim on the basis of the Tribe's sovereign immunity from suit.

In February 1987, the BIA issued a decision refusing to approve the contract. On April 7, the district court entered an order staying the court proceedings while EMCI completed an administrative appeal of the BIA decision. The order also prohibited the BIA and the Tribe from interfering with EMCI's operation of the bingo games under the 1985 agreement "pending exhaustion of administrative remedies." Rec., vol. I, doc. 185, at 3. The Tribe did not appeal this order. After the Assistant Secretary for Indian Affairs of the Department of Interior affirmed the initial agency decision not to approve the contract, the Tribe moved the district court to reopen the proceedings and renewed its motion for partial summary judgment under section 81. In response, the court issued an order

in October stating, in its entirety, "[f]or good cause shown, plaintiff The Citizen Band Potawatomi Indian Tribe of Oklahoma's motion to reopen proceedings is granted, and the stay order vacated." *Id.,* doc. 192, at 1.

In December 1987, EMCI filed a separate action in federal district court seeking judicial review of the administrative decision not to approve the 1985 contract. On January 19, 1988, the court in the instant action entered an order denying the Tribe's summary judgment motion. In so doing, the court referred to the separate action for judicial review as "part of the administrative remedies which must be exhausted before this court can render a decision." *Id.,* doc. 204, at 2. In addition, the court again stayed the action pending a final district court decision in the separate suit. In April, the Tribe filed a motion requesting that the trial judge in this action recuse himself and that the two actions be consolidated and heard before the judge hearing EMCI's judicial review case.

In May 1988, the court in EMCI's action ruled against EMCI.[1] On August 30, the Tribe ejected EMCI from the bingo enterprise premises. EMCI promptly filed an application for a temporary injunction and an order of contempt in this action. A hearing was held on EMCI's motions, at which EMCI argued that the Tribe had violated the order of April 7, 1987, prohibiting the Tribe from interfering with EMCI's operation of the bingo games, while the

Tribe argued that the April 7 order expired by its own terms when EMCI exhausted its administrative appeal. The district court ruled the Tribe in contempt and ordered the Tribe to return the bingo operation to EMCI. A hearing was held in this court on the Tribe's emergency application for a stay of the district court order. After the Tribe's request for an emergency stay was granted, the district court issued an order vacating the contempt holding. Although the judge also denied the Tribe's motion to recuse, the next day he reconsidered and removed himself from the case.

■ On appeal, the Tribe asserts that 1) the district court had no jurisdiction to enter the preliminary injunction due to the Tribe's immunity from suit; 2) the court entered the injunction in violation of the Tribe's right to due process; and 3) the court abused its discretion in granting EMCI injunctive relief. We agree with the Tribe that the injunction constitutes an abuse of discretion and must therefore be vacated.[2]

## II.

## PRELIMINARY INJUNCTION

A preliminary injunction is an extraordinary remedy, the exception rather than the rule. *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984). Because it constitutes drastic relief to be provided with caution, a preliminary injunction should be

---

1. The court granted the Tribe's motion to dismiss on the basis of sovereign immunity. It thereafter concluded that it had no jurisdiction over the suit against the federal officials. *See Enterprise Management Consultants, Inc. v. United States,* 685 F.Supp. 221 (W.D.Okla.1988). EMCI appealed to this court.

   In an opinion filed today, we affirm the dismissal of the Tribe on sovereign immunity grounds. We also affirm the dismissal of the suit against the federal defendants, holding that the Tribe is an indispensable party without which the action against the federal officials may not proceed. *See Enterprise Management Consultants, Inc. v. United States,* 883 F.2d 890, (10th Cir.1989).

2. We disagree with the Tribe's argument that the district court was without jurisdiction to enter an injunction due to the Tribe's sovereign

immunity. We believe that the Tribe waived its immunity by agreeing that the court could enter interlocutory orders preserving the status quo. *See* rec., vol. II, at 49. The Tribe's waiver is also reflected in its failure to appeal the court's April 7, 1987 order prohibiting the Tribe from interfering with EMCI's operation of the bingo games pending exhaustion of administrative remedies.

The Tribe also argues that it was denied due process with respect to the injunction hearing because its notice of the hearing was insufficient, its opportunity to be heard was inadequate, and the bias of the trial judge denied it the right to a fair and impartial tribunal. This argument is rendered moot by our decision *infra* that the injunction must be vacated under *Lundgrin v. Claytor,* 619 F.2d 61 (10th Cir.1980), and its progeny.

granted only in cases where the necessity for it is clearly established. *Goldammer v. Fay,* 326 F.2d 268, 270 (10th Cir.1964). In this circuit, a party seeking a preliminary injunction must satisfy four prerequisites:

"(1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest."

*Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980). When the movant has established that he will suffer irreparable injury and that the balance of hardships tips decidedly in his favor, however, he may satisfy the probability-of-success factor by raising "questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." *Id.* at 63 (quoting *Continental Oil Co. v. Frontier Refining Co.,* 338 F.2d 780, 781–82 (10th Cir.1964)); *Hartford House, Ltd. v. Hallmark Cards, Inc.,* 846 F.2d 1268, 1271 n. 2 (10th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.,* 805 F.2d 351, 358 (10th Cir.1986).

Although the grant or denial of a preliminary injunction is a matter committed to the district court's discretion, *see Lundgrin,* 619 F.2d at 63, we must scrutinize the exercise of that discretion with care, *see Tri-State,* 805 F.2d at 355. The district court's determination of the propriety of injunctive relief must be reviewed in light of the four *Lundgrin* factors set out above. *See National Distrib. Co. v. James B. Beam Distilling Co.,* 845 F.2d 307, 309 (11th Cir.1988); *American Hosp. Ass'n v. Harris,* 625 F.2d 1328, 1330–31 (7th Cir. 1980).

As an initial matter, we observe that the district court's failure to comply with the Federal Rules of Civil Procedure governing the form of orders granting injunctive relief raises a serious question as to whether the court did in fact measure the propriety of the injunction against the *Lundgrin* factors. Rule 52(a) states that "in granting or refusing interlocutory injunctions the court shall ... set forth the findings of fact and conclusions of law which constitute the grounds of its action." Fed.R. Civ.P. 52(a). Rule 65(d) similarly requires that "[e]very order granting an injunction ... shall set forth the reasons for its issuance." Fed.R.Civ.P. 65(d). The district court order granting the injunction here makes a single bare reference to the basis for granting that relief, stating that EMCI "will suffer immediate, irreparable harm if the [Tribe is] not enjoined from interfering with the operation of bingo by [EMCI], and that such injury cannot be subsequently compensated." Rec., vol. I, doc. 221, at 5. The order contains no fact findings or legal conclusions supporting this assertion. Moreover, the order does not address the balance of hardships, or EMCI's likelihood of success on the merits.

These deficiencies in the court's order may themselves constitute an abuse of discretion. *See American Can Co. v. Mansukhani,* 742 F.2d 314, 326 (7th Cir. 1984); *Coca-Cola Co. v. Tropicana Prod., Inc.,* 690 F.2d 312, 315 (2d Cir.1982). If the failure to comply with the formal requisites of an injunction order renders meaningful appellate review impossible, we may vacate the injunction and remand for findings and conclusions demonstrating that the moving party has met the standards for obtaining injunctive relief. *See Educational Testing Services v. Katzman,* 793 F.2d 533, 537 (3d Cir.1986). We need not remand here, however, because we are able to resolve this appeal on the basis of EMCI's inability to establish its likelihood of success on the merits, a purely legal issue based on undisputed facts.

The Tribe brought this suit to vacate its management contracts with EMCI, asserting that the contracts are void under section 81 because they have not been approved by the appropriate federal officials. Assuming solely for the purposes of our

analysis that EMCI has established irreparable harm and that the balance of hardships favors it, EMCI must nonetheless raise questions about the merits of the Tribe's claim that are so serious, substantial, difficult and doubtful as to make the merits fair ground for litigation. To satisfy this standard, the questions must rise to a certain level of "uniqueness and uncertainty or abound with untested legal arguments." *Koerpel v. Heckler*, 797 F.2d 858, 867 (10th Cir.1986).

The questions raised by EMCI simply do not meet these criteria. Every case addressing the validity of an unapproved bingo management contract under section 81 has voided the contract at the request of the tribe. *See Barona Group of the Capitan Grande Band of Mission Indians v. American Management & Amusement, Inc.*, 840 F.2d 1394 (9th Cir.1987) (as amended on denial of reh'g and reh'g en banc) *cert. dismissed,* —— U.S. ——, 109 S.Ct. 7, 101 L.Ed.2d 958 (1988); *A.K. Management Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785 (9th Cir. 1986); *Wisconsin Winnebago Business Comm. v. Koberstein*, 762 F.2d 613 (7th Cir.1985); *United States ex rel. Shakopee Mdewakanton Sioux Community v. Pan American Management Co.*, 616 F.Supp. 1200 (D.Minn.1985), *appeal dismissed,* 789 F.2d 632 (8th Cir.1986). EMCI attempts to distinguish these cases and to support its claim of likelihood of success on the merits by arguing that this case involves particularly egregious conduct by the Tribe that was absent in those cases. EMCI argues that this conduct supports its claim that the Tribe is estopped from asserting the protection of section 81. Contrary to EMCI's contention, however, similar claims of estoppel based on similar circumstances have been considered in the context of section 81 and rejected. *See A.K. Management*, 789 F.2d at 788–89; *Shakopee*, 616 F.Supp. at 1218.

Accordingly, we conclude that EMCI has failed to establish sufficient doubt as to the proper resolution of the merits to entitle it to injunctive relief. The injunction is therefore vacated.

REVERSED.