UNITED STATES of America, ex rel. The CITIZEN BAND POTAWATOMI INDIAN TRIBE OF OKLAHOMA, A Federally–Recognized Indian Tribe, For Itself and on Behalf of the United States, Plaintiff,

v.

ENTERPRISE MANAGEMENT CONSULTANTS, INC., an Oklahoma corporation; John Clark Caldwell, III; Leroy J. Wheeler; and EMCI Property Management, Inc., Defendants.

No. CIV–86–1171–A.

United States District Court,
W.D. Oklahoma.

April 11, 1990.

**456**

Michael Minnis and David McCullough, Pierson, Ball & Dowd, Oklahoma City, Okl., for plaintiff.

David W. Edmonds, Randy Witzke, Edmonds, Cole, Hargrave & Givens, William S. Price, U.S. Atty., John E. Green, First Asst. U.S. Atty., J. Lawrence Blankenship, General Counsel and Robert C. Jenkins, and James S. Matthews, Jr., Oklahoma City, Okl., for defendants.

### ORDER

ALLEY, District Judge.

This matter is before the Court on the renewed motion for partial summary judgment of plaintiff the Citizen Band Potawatomi Indian Tribe of Oklahoma (Tribe). Generally, the Tribe seeks a declaration that two bingo management agreements that it executed with defendant Enterprise Management Consultants, Inc. (Enterprise) are invalid under 25 U.S.C. § 81 because they were not approved by the Secretary of Interior. The Honorable Luther L. Bohanon denied the Tribe's motion in an order dated 15 September 1988, citing related litigation then pending before the Tenth Circuit as creating genuine issues of material fact. The Tenth Circuit disposed of this litigation by opinion dated 28 August 1989.[1]

At this time, the Court cannot determine the motion as to all defendants. Defendant Leroy J. Wheeler filed a Chapter 11 bankruptcy petition on 24 October 1989 and proceedings against him are stayed pursuant to 11 U.S.C. § 362. However, in view of the protracted nature of this litigation, spanning almost four years, the Court elects to reach the merits of the Tribe's motion as to the defendants other than Wheeler.[2] For the reasons noted below, the Tribe's motion for partial summary judgment is **GRANTED**.

The facts underlying this litigation are set out well in the Tenth Circuit's decision in *Potawatomi Indian Tribe v. Enterprise Management Consultants, Inc.*, 883 F.2d 886, 887–88 (10th Cir.1989). Briefly stated, the Tribe entered into successive management agreements with Enterprise in April of 1982 and 1985, under which Enterprise possessed the exclusive right to operate bingo games on tribal land. Enterprise's occupancy of tribal land in furtherance of this business purpose was provided for in a lease and sublease, executed by the Tribe and Enterprise and approved by the Bureau of Indian Affairs (BIA) in 1982. The management agreements were never endorsed with the approval of the Secretary of the Interior, and in October of 1987, the Secretary (through the Assistant Secretary of the Interior–Indian Affairs) specifically disapproved the 1985 agreement. The Tribe asserts that absent the approval of the Secretary the management agreements must be deemed null and void under 25 U.S.C. § 81. The Court agrees.

Section 81 is designed to protect Indians from entering into "improvident

---

1. See *Enterprise Management Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890 (10th Cir.1989).

2. Under settled principles, the declaration of bankruptcy by one or more defendants does not ordinarily bring the action to a halt as to other non-debtor defendants. *See, e.g.*, 8A C.J.S. *Bankruptcy* § 68(a) (1988). Moreover, in applying section 362, courts do not disregard the distinction between the individual debtors and the non-debtor corporations of which they are officers or directors. *See In re Nashville Album Productions, Inc.*, 33 B.R. 123, 124 (M.D.Tenn. 1983); *In re Loughnane*, 28 B.R. 940, 942 (Bankr.D.Colo.1983).

All defendants have been served with process in this action, but excluding Wheeler only Enterprise has filed an answer (or other defensive response). The clerk has entered default against EMCI Property Management, Inc. and it is accordingly bound by the Court's summary judgment determination. *See Frow v. De La Vega*, 82 U.S. (15 Wall) 552, 554, 21 L.Ed. 60 (1872); *Bastien v. R. Rowland & Co.*, 631 F.Supp. 1554, 1561 (E.D.Mo.1986), *aff'd*, 815 F.2d 713 (8th Cir.1987); 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2690, at 457 (1983) (noting that "if the plaintiff prevails on liability against the non-defaulting defendants, he is entitled to a judgment against both the defaulting and non-defaulting parties"). Although the Tribe must comply with the formal requirements of Fed.R.Civ.P. 55 to secure entry of default as to Clark Caldwell, III (served by publication), for all practical purposes the Court's summary judgment ruling binds him as well.

and unconscionable contracts" with non-Indians. *In re Sanborn*, 148 U.S. 222, 226, 13 S.Ct. 577, 579, 37 L.Ed. 429 (1893); *see A.K. Management Co. v. San Manuel Band*, 789 F.2d 785, 787 (9th Cir.1986). In pertinent part, the statute reads:

No agreement shall be made by any person with any tribe of Indians, or individual Indians not citizens of the United States, for the payment or delivery of any money or other thing of value, in present or in prospective, or for the granting or procuring any privilege to him, or any other person in consideration of services for said Indians relative to their lands ... unless such contract or agreement be executed and approved as follows:

....

Second. It shall bear the approval of the Secretary of the Interior and the Commissioner of Indian Affairs endorsed upon it.

....

All contracts or agreements made in violation of this section shall be null and void....

25 U.S.C. § 81. Under the clear weight of authority, bingo management agreements contemplate the provision of services relative to Indian lands and are thus governed by section 81. *See, e.g., Wisconsin Winnebago Business Committee v. Koberstein*, 762 F.2d 613, 619 (7th Cir.1985). The Court adopted this view on a prior occasion as to the specific agreements at issue here. *See Enterprise Management Consultants, Inc. v. United States ex rel. Hodel*, 685 F.Supp. 221, 222 (W.D.Okla.1988), *aff'd*, 883 F.2d 890 (10th Cir.1989).

Consequently, the conclusion is inescapable that the two bingo management agreements executed by the Tribe and Enterprise are null and void under section 81 because they lack the approval of the Secretary of Interior. Every court that has addressed the section 81 validity of bingo management agreements on similar facts has so ruled. *Potawatomi Indian Tribe*, 883 F.2d at 890 (collecting cases); *see, e.g.,*

*United States ex rel. Shakopee v. Pan American*, 616 F.Supp. 1200, 1215, 1218 (D.Minn.1985). Indeed, in assessing the propriety of a preliminary injunction previously entered in this case, the Tenth Circuit noted that Enterprise had completely failed to raise questions on the section 81 issue so as to "make the merits fair ground for litigation." *See Potawatomi Indian Tribe*, 883 F.2d at 890.

█ Enterprise's attempt to distinguish this authority is unpersuasive. Enterprise observes that in none of the cases holding bingo management agreements invalid were the Indians and the managers of the bingo operation also signatories of leases approved by the BIA as to tribal land, as in the case at bar. Even accepting the truth of this observation, the Court finds that it is irrelevant. For purposes of analysis under section 81, the two management agreements are appropriately viewed as independent contracts relative to tribal land. Enterprise has made no serious argument to the contrary. Accordingly, the fact that the BIA has approved certain leases between the Tribe and Enterprise relative to tribal land does not obviate the endorsement requirement of section 81 as to the two management agreements. *See* Letter of Ross O. Swimmer, at 2 (13 Oct. 1987) (Assistant Secretary of the Interior–Indian Affairs) (rejecting virtually identical argument by Enterprise as to effect of BIA approval of leases).

Similarly, Enterprise's defenses to a declaration of section 81 invalidity are not well taken. First, Enterprise contends that the section 81 issue is not ripe for decision in view of Congress' 1988 enactment of the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–21. Second, Enterprise contends that the Tribe is estopped to assert the section 81 invalidity of the management agreements because the Tribe failed to honor its promise to seek approval of the agreements by the Secretary of the Interior (or the Secretary's authorized representative).[3]

---

**3.** Enterprise raises other arguments with less substance. For example, Enterprise contends

that the Assistant Secretary of the Interior–Indian Affairs has acted unconstitutionally in (1)

■ In enacting the Indian Gaming Regulatory Act, Congress sought to provide standards for the regulation of bingo and other gaming operations on tribal land "to ensure that the Indian tribe is the primary beneficiary of the gaming operation." 25 U.S.C. § 2702(2). To implement its standards, the Act establishes a National Indian Gaming Commission and provides for the Commission's review "[a]s soon as practicable" after its organization of management agreements executed both prior to and after the Act's enactment date (17 October 1988). *Id.* § 2712(a).

According to Enterprise, the Court should decline to pass on the section 81 validity of the management agreements at issue and allow the matter to be presented to the Commission for review. However, Enterprise does not contend that the Commission is organized and prepared to accept management agreements for review at this time, and the Court's examination of the Code of Federal Regulations and the Federal Register provides no indication that the Commission is operational. The Court declines to delay the resolution of this litigation for an indefinite period to await the organization of the Commission. In this regard, the Court notes that the Act expressly provides for the operation of the existing regulatory scheme "until such time as the Commission is organized and prescribes regulations." 25 U.S.C. § 2709. Accordingly, Enterprise's first defense is ill-founded.

■ As to the second defense of estoppel, the 1985 management agreement does support Enterprise's contention that at one time the Tribe promised to seek the Secretary of Interior's approval of the Tribe–Enterprise business arrangement. Specifically, the management agreement provides that: "Both parties agree to diligently seek approval of this Management Agreement by the Secretary of the Department of the Interior ... or his authorized representatives." Management Agreement ¶ I(D) (8 Apr. 1985). On the other hand, the Tribe counters with testimony of one of its officials who states that Enterprise specifically requested the Tribe not to submit the 1985 management agreement for review by the BIA. *See* Affidavit of John A. Barrett, Jr. ¶ 9.

However, this factual dispute regarding the Tribe's compliance with its contractual obligation to seek the Secretary's approval does not bear on a material matter, for the Court concludes that the general contract-law principle of estoppel does not govern in the section 81 context. *See A.K. Management*, 789 F.2d at 788–89; *cf. Potawatomi Indian Tribe*, 883 F.2d 890 (noting that estoppel arguments based on Indians' egregious conduct "have been considered in the context of section 81 and rejected"). Like Enterprise, the management company in *A.K. Management* alleged that the Indian tribe was estopped to assert the absence of the Secretary's approval of the management agreement because the tribe did not comply with its express obligation under the agreement to use its best efforts to secure the Secretary's approval. However, the Ninth Circuit declined to apply the estoppel doctrine (instead, declaring the

adopting guidelines governing the approval of bingo management agreements that detail considerations *not found in the express terms of* section 81; and (2) retroactively applying these guidelines, which were adopted in 1986, to the 1985 bingo management agreement. These two contentions are not new: they appear in Enterprise's complaint in CIV–87–2464–A dated 14 December 1987. Complaint ¶¶ 55, 58. On the facts of that case, the Court expressly declined to reach them, finding that Enterprise's complaint addressed an area of discretionary agency action closed to judicial review by 5 U.S.C. § 701(a)(2). *See Enterprise Management Consultants, Inc. v. United States ex rel. Hodel,* 685 F.Supp. 221, 223 (W.D.Okla.1988), *aff'd,* 883 F.2d 890 (10th Cir.1989). The Court shall not

undermine its own ruling by reaching these contentions here. Furthermore, even if the Assistant Secretary's discretionary determination as to the validity of bingo management agreements was open to judicial review, the Court would likely conclude that, in view of the discretion reposed in the Secretary (and the Secretary's representatives) by section 81, and settled principles of administrative law, Enterprise's contentions are meritless. *United States ex rel. Shakopee v. Pan American,* 616 F.Supp. 1200, 1213 (D.Minn.1985); *see Kenai Oil & Gas, Inc. v. Department of the Interior,* 671 F.2d 383, 387 (10th Cir.1982); *Leaf v. Udall,* 235 F.Supp. 366, 368 (N.D.Cal.1964); C. Koch, *Administrative Law & Practice* § 3.77 (1985).

agreement invalid under section 81) for it concluded that to do so would "hobble the statute." 789 F.2d at 789. The Court finds the reasoning in *A.K. Management* persuasive. *See also American Surety Co. v. Gold Co.*, 375 F.2d 523, 528 (10th Cir.1966) (noting that the estoppel doctrine is not applied if its effect will be to permit some transaction barred by statute or public policy). Thus, Enterprise's second defense also fails.

For the reasons noted, then, the Tribe's motion for partial summary judgment is **GRANTED.** The Tribe urges the Court to appoint a special master pursuant to Fed.R. Civ.P. 53 to determine the amount of money and other items of value gained by Enterprise and the other defendants under the void management agreements. However, the Court shall consider this issue and the other remaining questions in this litigation at a scheduled status conference.

It is so ordered.