FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 30, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

BRANDON PRYOR,

    Plaintiff - Appellee,

v.

SCHOOL DISTRICT NO. 1, d/b/a Denver
Public Schools; SUPERINTENDENT
ALEX MARRERO, in his individual and
official capacities; DEPUTY
SUPERINTENDENT ANTHONY
SMITH, in his individual and official
capacities,

    Defendants - Appellants.

No. 23-1000

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:22-CV-02886-JLK)**
_____

Andrew D. Ringel (Jared R. Ellis and Katherine N. Hoffman with him on the briefs), of
Hall & Evans, L.L.C., Denver, Colorado for Defendants-Appellants.

Andrew McNulty (Mari Newman with him on the brief), of Killmer, Lane & Newman,
LLP, Denver, Colorado, for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

The First Amendment protects those who petition the government for redress of grievances, even though such speech may offend government officials or damage their public reputation. Plaintiff Brandon Pryor passionately—and at times profanely—criticized actors within Defendant Denver School District No. 1 ("District") when he advocated for change within the District. In response, Defendants stripped him of his volunteer position and restricted his access to District facilities. Because the District likely acted in retaliation against Plaintiff's First Amendment rights, we exercise jurisdiction under 28 U.S.C. § 1292 and affirm the district court's preliminary injunction.

## I.

Plaintiff Brandon Pryor advocates for quality educational opportunities in Far Northeast Denver ("FNE Denver"). His advocacy takes many forms: he texts privately with District administration, speaks with officials in person, appears on local podcasts and news media, posts on social media, attends board meetings and work groups, and participates in public comment sessions. He has also served as a volunteer football coach in FNE Denver for many years. In 2019 he co-founded a school in FNE Denver: the Robert W. Smith STEAM Academy ("STEAM Academy").

In October 2022, the District served on Plaintiff a letter from Aaron Thompson, the District's general counsel ("Thompson Letter"). The Thompson Letter alleged that Plaintiff had displayed "abusive, bullying, threatening, and intimidating conduct directed at [District] staff." As support for its allegations, the

2

Thompson Letter described interactions between Plaintiff and District staff throughout the previous two years.  The Thompson Letter also quoted Plaintiff's text messages, personal Facebook posts, and statements from phone calls and a local podcast.

The Thompson Letter explained that Neisa Lynch, newly hired principal of Montbello High School in FNE Denver, had complained to the District that Plaintiff subjected her to harassment, defamation, and slander and that he had intimidated and threatened her and her husband.[1]  In her complaint, Lynch cited many of Plaintiff's Facebook posts—including a post that specifically called for Lynch's resignation or termination; a post in which Plaintiff stated that she (and others) "are a disgrace to the entire community"; and a post that included Lynch's husband's LinkedIn profile and stated: "What are the chances that Neisa Lynch and her husband Mike Lynch worked together to steal our kids [sic] game? . . . I'm sure they've talked about it all . . ."  Lynch also complained that Plaintiff told community members not to enroll children at her school; called her derogatory names such as "plantation builder"; and—according to the Thompson Letter—"suggest[ed] her colleagues have endured hate speech, harassment, defamation, and slander by [Plaintiff] as well."

---

[1] Lynch was not the first District employee to complain about Plaintiff.  Other District employees had complained that Plaintiff had become angry with them and had yelled and cursed in personal interactions. In response to these complaints, the District investigated and found that Plaintiff acted unprofessionally but did not violate District policies on harassment.  The District ultimately did not enforce restrictions on Plaintiff based on these prior complaints.

Each conversation, post, or interaction that the Thompson Letter listed related in some manner to Plaintiff objecting to or calling for changes in District operations. In many posts, Plaintiff called for the resignation or termination of District officials; in others, he criticized District officials for operational missteps or decisions with which he disagreed. The text messages between Plaintiff and District staff included specific demands, sometimes coupled with derogatory statements directed at the staff. Some of Plaintiff's statements, as quoted in the Thompson Letter, were cryptic, such as "Warning! Don't poke a resting bear!" And a few statements contained expletives—such as the following: "Watch out for the Black folks trying to Whitesplain this bullshit" (in a Facebook comment related to a post criticizing Lynch for hiring decisions); and "Stay the fuck away from me" (in a phone conversation with the District's Regional Instructional Superintendent after Plaintiff learned she had canceled a planning meeting for the school he founded).

The Thompson Letter stated that Plaintiff violated various District policies and restricted Plaintiff's access to District facilities and relationship with the District. Plaintiff appealed these restrictions. The District eventually removed some restrictions, allowing Plaintiff to attend District Board meetings and participate in public comment sessions in person. But the District maintained two categorical restrictions ("Restrictions"): (1) the District removed Plaintiff from his position as volunteer football coach; and (2) the District revoked Plaintiff's privileged access to District facilities, including STEAM Academy, that he had previously enjoyed based on his status as a school founder.

4

While Plaintiff's appeal to the District was pending, Plaintiff sued the District, Superintendent Alex Marrero, and Deputy Superintendent Anthony Smith alleging (among other claims) First Amendment retaliation under 42 U.S.C. §§ 1983 and 1985. Plaintiff moved for a preliminary injunction related to his First Amendment retaliation claim, asking the district court to (1) enjoin Defendants from banning Plaintiff from District property or retaliating against him, his children, or STEAM Academy; and (2) restore Plaintiff's ability to coach, his access as a school founder, and his ability to speak at public comment sessions. The district court granted a preliminary injunction in part. The district court enjoined Defendants from enforcing the Thompson Letter restrictions and from taking any other retaliatory action against Plaintiff, his family, or STEAM Academy for pursuing the lawsuit. Defendants appeal the preliminary injunction.

## II.

We review for abuse of discretion a district court's grant of a preliminary injunction. Chamber of Com. v. Edmondson, 594 F.3d 742, 764 (10th Cir. 2010) (citing Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1230–31 (10th Cir. 2005)). "A district court abuses its discretion when it commits an error of law or makes clearly erroneous factual findings." Id. (quoting Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1070 (10th Cir. 2009)). Thus, we review the district court's conclusions of law de novo and its factual findings for clear error. Heideman v. S. Salt Lake City, 348 F.3d 1182, 1188 (10th Cir. 2003) (citing Davis v. Mineta, 302 F.3d 1104, 1111 (10th Cir. 2002)).

5

III.

A.

A preliminary injunction is an extraordinary remedy constituting drastic relief. Free the Nipple-Fort Collins v. City of Fort Collins, Colo., 916 F.3d 792, 797 (10th Cir. 2019) (quoting United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc., 883 F.2d 886, 888 (10th Cir. 1989)).  To obtain a preliminary injunction, a movant must establish four factors: (1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the court denies the injunction; (3) the movant's harm without the injunction outweighs the other party's harm with the injunction; and (4) the injunction is not adverse to the public interest.  Id. (quoting Beltronics, 562 F.3d at 1070).

We first examine Plaintiff's likelihood of success on the merits in his underlying lawsuit.  Plaintiff claims Defendants—acting under color of law— retaliated against him for speech that the First Amendment protects, violating his constitutional rights.  The elements of a First Amendment retaliation claim differ depending on whether the speaker is employed by the alleged retaliator.  Klen v. City of Loveland, 661 F.3d 498, 508–09 (10th Cir. 2011) (quoting Van Deelen v. Johnson, 497 F.3d 1151, 1155–56, 1158 (10th Cir. 2007)).  Defendants concede that Plaintiff is not a District employee but argue his volunteer position requires us to use the employee test anyway.  Plaintiff contends that his unpaid volunteer work does not elevate him to employee status.  Without deciding Plaintiff's status, we apply the

6

more stringent employee test as Defendants urge.[2]  We conclude Plaintiff is substantially likely to succeed on the merits of his claim.

Under the employee test, a court considering a First Amendment retaliation claim must balance five factors:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Eisenhour v. Weber Cnty., 744 F.3d 1220, 1227–28 (10th Cir. 2014) (quoting Dixon v. Kirkpatrick, 553 F.3d 1294, 1301–02 (10th Cir. 2009)).  The first three factors present questions of law that we review de novo.  Id. at 1228

---

[2] Non-employee plaintiffs need only to prove three elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

Klen, 661 F.3d at 508 (quoting Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000)).  Although the three elements of the non-employee test do not neatly correspond to elements of the employee test, the non-employee test is generally less stringent and protects a broader free speech interest.  See Lane v. Franks, 573 U.S. 228, 237 (2014) (quoting Garcetti v. Ceballos, 547 U.S. 410, 421 (2006)).  For substantially the same reasons that Plaintiff is likely to succeed on the merits using Defendants' preferred test, he is also likely to succeed under the non-employee test.

(quoting Dixon, 553 F.3d at 1302).  The fourth and fifth factors present fact issues that we review for clear error.  Id. (quoting Dixon, 553 F.3d at 1302).

First, we consider whether the movant spoke pursuant to his official duties.  Id. at 1227 (quoting Dixon, 553 F.3d at 1301–02).  Generally, a governmental employer may control speech within the scope of an employee's official duties.  Rohrbough v. Univ. of Colo. Hosp. Auth., 596 F.3d 741, 748 (10th Cir. 2010) (citing Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1203 (10th Cir. 2007)).  But this control may not extend to an employee's speech when he participates in civic discourse as a citizen—outside his official work duties.  Garcetti v. Ceballos, 547 U.S. 410, 421–22 (2006) (citing Pickering v. Bd. Of Ed., 91 U.S. 53, 569–70 (1968)).  The critical question is not whether the speech related to the official duties, but whether it was within the scope of the employee's work tasks that the employer paid him to perform.  Lane v. Franks, 573 U.S. 228, 241 (2014) (quoting Garcetti, 547 U.S. at 421–22).

Under our Court precedent, plaintiffs speak personally as citizens, outside their official duties, when speaking out against wrongdoing in a citizen forum with no job responsibility to report the wrongdoing, Brammer-Hoelter, 492 F.3d at 1204–05; when engaging in categories of activity for which they are not paid, Thomas v. City of Blanchard, 548 F.3d 1317, 1325 (10th Cir. 2008) (citing Green v. Bd. of Cnty. Comm'rs, 472 F.3d 794, 801 (10th Cir. 2007)); and when complaining to authorities about operational issues for which they bear no responsibility, Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1332–33 (10th Cir. 2007).

8

Based on these principles, we must determine whether Plaintiff spoke personally as a citizen or professionally as an employee. The district court found that Defendants presented no evidence on Plaintiff's official responsibilities as a volunteer coach or school founder. We agree. Without record evidence of Plaintiff's official responsibilities, we have no foundation for holding that Plaintiff's speech in question was a part of his official responsibilities.

Relevant evidence supports that Plaintiff did *not* speak as part of his official responsibilities. Plaintiff primarily spoke out against District operations, heavily criticizing the decisions of the District and its employees. Defendant Smith's testimony and a letter from the District to Plaintiff both show that Plaintiff's role as a founder did *not* give him authority or responsibility over the District's operational issues. And Plaintiff voiced criticism through his personal Facebook page, independent news outlets, and at public comment sessions—all forums citizens often use for civic discourse. As in Brammer-Hoelter, these forums support that Plaintiff spoke while participating in civic discourse as a citizen. Thus, the first factor weighs in Plaintiff's favor.

Second, we consider whether Plaintiff spoke on a matter of public concern or on a matter of purely personal interest. Eisenhour, 744 F.3d at 1227 (quoting Dixon, 553 F.3d at 1301–02). In this context, the First Amendment may protect the former but not the latter. Id. at 1228 (citing Wulf v. City of Wichita, 883 F.2d 842, 856–57 (10th Cir. 1989)). We consider whether Plaintiff intended to expose a public official's wrongdoing, corruption, or misdeeds. Id. (quoting Canaway v. Smith, 853

F.2d 789, 796 (10th Cir. 1988)).  We examine the "content, form, and context" of Plaintiff's speech.  Id. (quoting Connick v. Myers, 461 U.S. 138, 147–48 (1983)). Even if personal grievances partially motivate speech, the speech still involves matters of public concern when it reveals official wrongdoings because this interests the public.  Trant v. Oklahoma, 754 F.3d 1158, 1165–66 (10th Cir. 2014) (citing Brammer-Hoelter, 492 F.3d at 1205).

In each interaction or conversation in question, Plaintiff expressed that he intended to expose wrongdoing in the local school board and school administration. Plaintiff revealed specific information about local schools and officials, presented his grievances to the board and members of the administration, and made specific requests for change that would affect the entire community.  This content, form, and context fits speech intended to petition the government for redress of grievances. Plaintiff's personal passion on these issues does not lessen the community's interest in potential malfeasance by local government officials.  Accord id. at 1165 (citing Brammer-Hoelter, 492 F.3d at 1205).  Thus, Plaintiff spoke on matters of public concern.

Third, we consider whether the District's interests as an employer in promoting efficiency outweigh Plaintiff's free speech interests.  Eisenhour, 744 F.3d at 1227 (quoting Dixon, 553 F.3d at 1301–02).  The First Amendment protects an employee's dissenting speech "unless the employer shows that some restriction is necessary to prevent the disruption of official functions or to insure effective performance by the employee."  Dixon, 553 F.3d at 1304 (quoting Gardetto v.

10

Mason, 100 F.3d 803, 815 (10th Cir. 1996)).  Expected public reaction that impacts external relationships does not constitute a detrimental impact and does not weigh in the District's favor.  See Flanagan v. Munger, 890 F.2d 1557, 1566 (10th Cir. 1989).  A governmental employer must justify the restrictions on an employee's speech by showing that, based on the employer's interest, its need for the restrictions outweighs the employee's right to speak.  See id. at 1565 (quoting Childers v. Indep. Sch. Dist. No. 1, 676 F.2d 1338, 1341 (10th Cir. 1982)).

We give great weight to an employee's First Amendment rights when he speaks out to expose government corruption—especially when the employee has first complained directly to the governmental entity's administration.  See Lytle v. City of Haysville, 138 F.3d 857, 865 (10th Cir. 1998) (quoting Conaway v. Smith, 853 F.2d 789, 797 (10th Cir. 1988)).  In such cases, the governmental entity must carry an even higher burden of showing a stronger interest than we would otherwise require.  Helget v. City of Hays, 844 F.3d 1216 (10th Cir. 2017) (quoting Curtis v. Okla. City Pub. Sch. Bd. of Educ., 147 F.3d 1200, 1213 (10th Cir. 1998)).  This is because a governmental entity's interest in efficient operations should not only encompass a desire for a harmonious employee environment but should also extend to extinguishing corruption and misconduct.  See Brammer-Hoelter, 492 F.3d at 1207 (the employer's efficiency is the controlling question); Hulen v. Yates, 322 F.3d 1229, 1239 (10th Cir. 2003) (allegations of wrongdoing more greatly protected when raising serious issues that concern the taxpaying public).

11

Defendants argue that Plaintiff's speech threatened their safety. But the district court found that Plaintiff's speech did not endanger the District employees' safety or security—only their jobs. The record includes testimony by Defendants themselves that Plaintiff threatened the District staff's jobs, reputation, careers, and legal liability—*not* their physical safety. Defendants contend Plaintiff wanted a physical fight and rely on Plaintiff's text messages to Nicky Yollick, a community member, in which Plaintiff stated, "When I see you you are going to have a problem," and, "Send address and I can come now" ("Yollick Messages"). But Plaintiff testified that his intent in the Yollick Messages was to meet for a conversation and that Plaintiff and Yollick had a shared history in advocacy related to District operations. Thus the district court did not clearly err in its finding.

Meanwhile, Plaintiff spoke on matters of serious concern to the taxpaying public—school funding, cronyism, educational choice, and discrimination. And he repeatedly engaged directly with District officials in his attempts to effect change. So, Plaintiff's interest in speaking is strong. See Pickering, 391 U.S. at 566, 571–73 (protecting speech by school employees who attacked school funding, operations, athletic programs, and individual school officials). The impoliteness, passion, or profanity of his speech do not overcome his free speech interests. See ACLU v. Johnson, 194 F.3d 1149, 1156 (10th Cir. 1999) (quoting Sable Commc'ns, Inc. v. FCC, 492 U.S. 115, 126 (1989)) (the First Amendment protects even indecent expression). And the offensive, vulgar manner of Plaintiff's speech does not deprive him of constitutional protections—especially in the context of petitioning the

12

government for redress for grievances. Klen, 661 F.3d at 509 (quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 569, 571–72 (1942)).

Defendants fail to show that their interest in enforcing the Restrictions outweighs Plaintiff's interest in speaking. Moreover, Defendants' failure to enforce restrictions after prior complaints, engage in conflict resolution or mediation, or make any other effort to protect its employees contradicts any assertion that they have a significant interest in enforcing the Restrictions. Defendants' testimony that Plaintiff threatens their reputations suggests that Defendants' interest lies in curbing an expected public reaction. This does not weigh in their favor because the District lacks a valid interest in avoiding embarrassment or irritation at the expense of community members' free speech rights. See Flanagan, 890 F.2d at 1566. Thus, Defendants do not carry their burden of justifying the Restrictions and the third factor weighs in Plaintiff's favor.

The fourth and fifth factors are questions of fact that turn on the non-movant's intent. See Eisenhour, 744 F.3d at 1228 (quoting Dixon, 553 F.3d at 1302). Because we hold that the district court did not clearly err in its factual findings, we defer to its findings that the fourth and fifth factors support Plaintiff.

In evaluating the fourth factor, the district court found little doubt that Plaintiff's protected speech motivated the Restrictions. And in evaluating the fifth factor, the district court found that evidence "strongly suggests" Defendants lacked any reason to apply the Restrictions apart from Plaintiff's protected speech, and Defendants failed to carry their burden to show otherwise. See Trant, 754 F.3d

13

at 1167 (quoting <u>Cragg v. City of Osawatomie</u>, 143 F.3d 1343, 1346 (10th Cir. 1998)) (burden shifts to defendants to show they would have reached the same employment decision in the absence of the protected activity).  The record supports these findings because (1) the Thompson Letter cited protected speech from Plaintiff's Facebook posts when imposing the Restrictions and (2) Aaron Thompson, counsel for the District, testified that the Lynch complaint about the same Facebook posts served as the "catalyst" for the Restrictions.[3]  Thus, the district court did not clearly err.

Because all five factors of the employee test weigh in Plaintiff's favor, Plaintiff is substantially likely to succeed on the merits of his First Amendment retaliation claim.  Thus, Plaintiff establishes the first prong of the test for a preliminary injunction.

When a movant establishes the first prong of a preliminary injunction based on a First Amendment claim, the remaining prongs generally also weigh in his favor. <u>Hobby Lobby Stores, Inc. v. Sebelius</u>, 723 F.3d 1114, 1145 (10th Cir. 2013), <u>aff'd sub nom.</u> <u>Burwell v. Hobby Lobby Stores, Inc.</u>, 573 U.S. 682, (2014) (quoting <u>ACLU v. Alvarez</u>, 679 F.3d 583, 589 (7th Cir. 2012)).  That is true here.

---

[3] Defendants argue that the district court wrongly focused on the Lynch complaint and ignored other interactions between Plaintiff and the District.  But under this prong, the district court needed to consider the District's motivations for the Restrictions.  Aaron Thompson's testimony informed the district court that the Lynch complaint catalyzed the Restrictions.  Moreover, the district court certainly considered the extensive history between Plaintiff and the District, as shown by its lengthy statement of the facts.  The district court did not err in its focus.

Under the second prong, Plaintiff must show irreparable injury if we deny the injunction.  See Free the Nipple, 916 F.3d at 797 (quoting Beltronics, 562 F.3d at 1070).  Defendants argue Plaintiff won't suffer irreparable injury because the Restrictions do not prevent Plaintiff from speaking.  But our precedent is clear that a First Amendment violation constitutes irreparable injury.  Id. at 806.  Defendants likely violated Plaintiff's First Amendment rights by retaliating against his speech, and under our precedent this constitutional violation establishes irreparable injury even if the Restrictions do not directly silence Plaintiff's protected speech.  And any potential loss of First Amendment freedoms—however small—also establishes irreparable injury.  Elrod v. Burns, 427 U.S. 347, 373 (1976) (citing N.Y. Times Co. v. United States, 403 U.S. 713 (1971)).  Plaintiff shows that the Restrictions, by their retaliatory nature, *have* chilled his protected speech and deterred him from continuing to petition the government for redress of his grievances—again establishing irreparable injury.

Under the third prong for a preliminary injunction, Plaintiff must show that the injury he faces without the injunction outweighs Defendants' injury under the injunction.  Free the Nipple, 916 F.3d at 797 (quoting Beltronics, 562 F.3d at 1070).  A governmental interest in upholding a mandate that is likely unconstitutional does not outweigh a movant's interest in protecting his constitutional rights.  See Hobby Lobby, 723 F.3d at 1145 (quoting Awad v. Ziriax, 670 F.3d 1111, 1131–32 (10th Cir. 2012)).  For the same reasons we held that the District's interests do not outweigh Plaintiff's free speech interests, we also hold that the injury to Plaintiff's free speech

15

interests exceeds the District's legitimate injuries under the injunction if the District is not enjoined from continued retaliation.

Finally, under the fourth prong for a preliminary injunction, Plaintiff must show that the requested injunction is not adverse to the public interest. Free the Nipple, 916 F.3d at 797 (quoting Beltronics, 562 F.3d at 1070). "It is always in the public interest to prevent the violation of a party's constitutional rights." Hobby Lobby, 723 F.3d at 1145 (quoting Awad, 670 F.3d at 1132). Thus, this injunction is not adverse to the public interest.

Because all four prongs for a preliminary injunction favor Plaintiff, the district court did not abuse its discretion in granting the preliminary injunction.

B.

Defendants argue that the preliminary injunction the district court ordered is a disfavored mandatory injunction because it mandates action and disturbs the pre-litigation status quo. Defendants failed to make this argument at the district court even though Plaintiffs' application for injunctive relief specifically requested the parts of the order that Defendants now claim is mandatory. Defendants also failed to request plain-error review. Without deciding whether we must apply waiver, we reject Defendants' argument because it lacks merit.

An injunction is mandatory when it requires defendants to do something they were not doing during the most recent peaceable status quo—that is, the last uncontested period preceding the injunction. See Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 269 F.3d 1149, 1154–55 (10th Cir. 2001) (citing SCFC ILC,

Inc. v. Visa USA, Inc., 936 F.2d 1096, 1099 (10th Cir. 1991), holding modified by O

Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973 (10th Cir.

2004)).  To obtain a mandatory injunction, the moving party must make a stronger

showing than otherwise that two factors—likelihood of success on the merits and

balance of harms—weigh in his favor.  Free the Nipple, 916 F.3d at 797 (quoting

Fish v. Kobach, 840 F.3d 710, 724 (10th Cir. 2016)).

Defendants contend Plaintiff faces this heavier burden.  But the injunction

does not disturb the last peaceable status quo.

The Restrictions banned Plaintiff from coaching football or accessing District

facilities other than in his capacity as a parent and a member of the public.  Plaintiff

contested the Restrictions.  So the last peaceable status quo existed *before* the

Restrictions—when Plaintiff coached football and maintained special access to

District facilities.  The preliminary injunction restores the most recent peaceable

status quo because it merely prevents the District from enforcing the Restrictions and

prohibits additional unconstitutional actions.  It does not mandate additional actions.

Thus, it is not a mandatory injunction, and the heavier burden does not apply.

C.

An order granting an injunction must "describe in reasonable detail . . . the act

or acts restrained or required."  Fed. R. Civ. P. 65(d)(1)(c).  We require that

injunctions be "reasonably specific" to notify the defendant of what is prohibited.

Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1243 (10th Cir. 2001)

(quoting Keyes v. School Dist. No. 1, 895 F.2d 659, 668 (10th Cir. 1990)).  This

17

Court can modify an injunction that lacks specificity when such modification is "just under the circumstances."  28 U.S.C. § 2106.

Defendants argue that the preliminary injunction fails to specify sufficiently what acts are prohibited.  They object that the district court did not outline appropriate restrictions on Plaintiff's speech.  As a result, Defendants claim they must guess whether their future actions will violate the injunction.  Yet Defendants specify no action on which they seek clarification or any restriction they want to enforce against Plaintiff.

Under these circumstances, we cannot conclude that the preliminary injunction lacks sufficient specificity.  We will not speculate about actions Defendants would take but for fear of violating the preliminary injunction.  Defendants may seek future interpretation, modification, or clarification from the district court.  See Dombrowski v. Pfister, 380 U.S. 479, 492 (1965) (citing Sys. Fed'n No. 91, Ry. Emps. Dep't, AFL-CIO v. Wright, 364 U.S. 642 (1961); Chrysler Corp. v. United States, 316 U.S. 556 (1942); United States v. Swift & Co., 286 U.S. 106 (1932)) (". . . district courts retain power to modify injunctions in light of changed circumstances."); Pimentel & Sons Guitar Makers, Inc. v. Pimentel, 477 F.3d 1151, 1155 (10th Cir. 2007) (district courts can interpret or clarify existing injunction).

IV.

We conclude that the district court did not commit an error of law or make clearly erroneous factual findings.  Thus, the district court did not abuse its discretion in granting Plaintiff the preliminary injunction.

AFFIRMED.